JOHN H. FOSTER, Respondent, v. PEOPLES GAS AND ELECTRIC COMPANY OF OSWEGO, Appellant.

JOHN F. RYAN, Respondent, v. PEOPLES GAS AND ELECTRIC COMPANY OF OSWEGO, Appellant.

TAYLOR, J. (dissenting). The judgment appealed from is necessarily based upon a finding that defendant's employee Lloyd was driving its car on the day in question with the implied consent of defendant. It is my opinion that this finding is contrary to the evidence. Therefore, upon that ground alone, I dissent from the conclusion reached by a majority of the court. As I will point out, the testimony now under review differs materially from that in the case of *McDonald*

v. *People's Gas & Electric Co.* (249 N. Y. 584), although in the main it is the same. This record shows that defendant's fleet of automobiles was kept parked on the company's premises near its office building; that while Lloyd was in the meter department, and up to July, 1923, the defendant took out a chauffeur's license for him, and he drove a car in the defendant's business; but that thereafter he went to work in the company's electric station, where none of his duties required the use of a car — and that after the transfer he had no license and drove no car. It was during this latter period that the " two permitted uses " (referred to later) and the mishap occurred. The record also shows that whenever Lloyd took a car it was entirely for his own use, " just for rides," and (excepting the claimed two occasions only) always, including the day in question, without the express consent of any one connected with the defendant company; and that no company official or clerk saw Lloyd go away with the car the day in question, or knew that he was going. The offices were closed that day, Thanksgiving Day, 1926. Lloyd testified that such taking without consent had occurred approximately twenty-three times, and that on two other occasions only, both in June, 1926, five months before November 25, 1926, he had taken cars with the permission of the garage superintendent. But Lloyd also testified that on these two occasions he did not talk with any of the officials before he took the cars nor after he came back with them. The testimony as to these two occasions was halting and unspecific. Then, on the trial, defendant — during cross-examination — introduced in evidence a sworn statement made by Lloyd for defendant's counsel before the trial in the *McDonald* case, and not put in evidence in that case. This statement, as Lloyd freely admitted, was made without any inducement or compulsion — of Lloyd's own free will. Lloyd admitted also that defendant's counsel then " implored " him to tell the whole truth, in order that they might decide whether or not the defendant was liable, and that the lawyers told him that what he said would make no difference in his staying with the company (defendant). In this statement Lloyd said that he never took a car with express consent; and in the instant trial he testified that he did not know why he had made the above-mentioned statement. Testimony was received, under objection, that employees of defendant other than Lloyd had driven defendant's cars previous to November 25, 1926, generally with the employer's consent, sometimes without it. This testimony was admitted upon the theory that this use of cars by employees had continued so long and so openly and notoriously that defendant was chargeable with notice of it, and, therefore, that Lloyd had implied consent on the occasion in question. This kind of testimony was received in the *McDonald* case, wherefore its competency stands approved. It is upon this testimony and that of Lloyd that the finding of implied consent must rest. No such implication could arise from Lloyd's testimony except for his swearing that back in June, 1926, he twice had express permission to use a company car. In this state of the proof the entirely voluntary sworn statement of Lloyd (not before the jury in the *McDonald Case*, 249 N. Y. 584) goes further than to merely cast doubt upon his credibility. It brands his uncorroborated testimony as to permitted use as " no evidence," at least " none that ought reasonably to satisfy a jury." (*Matter of Case*, 214 N. Y. 199, 204; *Matter of Jordan* v. *Decorative Company*, 230 id. 522, 526, 527; *Matter of Burnham*, 234 id. 475.) But even granting that other employees were occasionally permitted to use company cars for their private purposes and that

Lloyd was really allowed to use a car once to draw a load of wood and another time for some similar purpose, how can it reasonably be concluded from this that Lloyd had tacit consent to use a car for such an expedition as that in which the mishap occurred? Another matter must be considered. For a long time (and during the whole period in question) the defendant had in effect an order that no employee of the company should use a company car upon his private or personal business without the consent of the manager of the defendant or some other official in authority. What was defendant compelled to do to escape liability for a use without its knowledge or permission, this rule being in force? Would an occasional loan of a car to an employee for a particular use brand every use thereafter, unauthorized, unknown to the company, however stealthily accomplished, for whatever purpose, as being a use impliedly consented to? Was the defendant bound to keep its cars chained, when not under the direct observation of its officials, to escape surreptitious user resulting in financial liability of the car owner? Of course, defendant could expressly or impliedly consent to the use of its cars, in the face of such a prohibition. But — the rule being in effect — proof of consent by implication should for that reason be convincing. Section 282-e of the Highway Law is one of considerable scope, and serves a beneficent purpose. But after all, the implied " consent " [" permission "] specified in the section must be a real consent, and the facts from which the implication is derived must be definitely established by a fair preponderance of the evidence. And the use of the car must be a legal use, not that of one appropriating without consent. (Penal Law, § 1293-a). The question of defendant's liability was a close one in the *McDonald Case* (*supra*). I should not hesitate to yield to the judgment of the Court of Appeals as indicated in that case, did I not feel that for the reasons given the evidence before us now falls shorter than it did in the prior case of establishing user with the implied consent of defendant. Hence I vote to reverse the judgment on the law and facts and to dismiss the complaint.