CHARLOTTE L. Fox, Respondent, *v.* THE EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LIMITED, OF LONDON, ENGLAND, Appellant.*

HENRY J. Fox, Respondent, *v.* THE EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LIMITED, OF LONDON, ENGLAND, Appellant.*

Fourth Department, January 9, 1935.

* Affd., 267 N. Y. ——.

*H. Duane Bruce*, for the appellant.

*Benjamin E. Shove*, for the respondents.

·EDGCOMB, J.   Plaintiffs were injured in an automobile accident, which occurred in the village of Bridgeport on the evening of September 30, 1928, when a car driven by the plaintiff Henry J. Fox collided with a Chevrolet coupe owned by the city of Syracuse, and driven by Fred J. Green. Asserting that the accident was caused by Green's negligence, and that his fault was attributable to the owner of the vehicle, under the provisions of section 59 of the Vehicle and Traffic Law, the plaintiffs sued both Green and the

city to recover the resulting damages which they sustained. The result was a happy outcome for the plaintiffs, and they recovered substantial verdicts against each defendant.

The city was successful upon its appeal. It was held that Green was not operating the car at the time of the accident in the city's business, nor with its consent, express or implied (*Fox* v. *City of Syracuse*, 231 App. Div. 273; affd., 258 N. Y. 550).

Green did not appeal. An execution was issued against him, and was returned wholly unsatisfied.

Claiming that a policy of liability insurance, which had been written by the defendant at the city's instigation, and which covered the car in question, insured Green, as well as the city, plaintiffs bring these actions against the defendant insurance company, under the provisions of section 109 of the Insurance Law, to recover the amount of their unpaid judgments against Green.

We are dealing here solely with the contract rights of the parties as fixed by the policy. Whether the plaintiffs can recover in these two actions depends entirely upon the construction which should be given to the policy issued by the defendant to the city of Syracuse, covering the Chevrolet coupe in question. Did it cover the operation of the car by Mr. Green at the time of and under the circumstances surrounding this particular accident? If so, plaintiffs can recover; otherwise, the complaints must be dismissed. This necessitates a careful examination of the policy, and a short review of the evidence in so far as it relates to this particular question.

The language of the policy is somewhat confusing. Instead of writing a simple contract of insurance, one which a layman could read and easily understand, and which states in concise, plain language just who is covered by the policy, and under what conditions liability exists, we find a long, rambling, involved policy, with provisions in one part modified to some extent by conditions contained in other clauses of the agreement, or in riders attached thereto.

While the policy may well be criticised as altogether too complicated and involved, I do not think that it can be said to be ambiguous in the sense that two different meanings can be drawn from the language employed.

The main part of the policy contains an omnibus coverage clause, and a rider is attached which states in general terms the persons or corporations to whom the policy is extended. Why it was necessary to have the two separate coverage clauses is difficult to understand. They are worded differently, but as I read them they mean one and the same thing. For purposes of comparison, I quote, side by side, the pertinent parts of the two provisions:

*Omnibus Coverage*

"This Policy shall cover the Assured named in the Declarations [the city of Syracuse being such named assured] and any person * * * legally operating any of the automobiles described therein and the protection granted by this Policy is so extended as to be available in the same manner and under the same conditions as it is available to the named Assured, to any person * * * legally responsible for the operation of such automobiles, provided such use or operation is with the permission of the named Assured."

*Rider*

"The policy to which the Endorsement is attached is extended to insure the named Assured (the owner of the automobile or automobiles described in the Policy) against liability and responsibility for damages resulting from negligence in the operation of such motor vehicle * * *, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner."

The rider was undoubtedly attached to the policy to comply with the requirements of section 109 of the Insurance Law, and section 59 of the Vehicle and Traffic Law, but does not, as I read it, change or modify the conditions contained in the omnibus coverage clause. Both insure the operator of the vehicle only when he is lawfully driving or using it in the business of the owner, or with the city's permission, express or implied.

Reading these various provisions of coverage together, I fail to find any ambiguity as to whom the defendant intended to insure, and I can see no possible theory upon which it can be said that the policy covers Green, unless he was legally operating the car in the business of the city, or with its express or implied consent.

Upon that subject a brief *résumé* of the evidence is necessary.

Green was a fireman in the employ of the city. He had been detailed to the bureau of buildings, and was charged with the duty of examining complaints relating to the lighting of halls in apartment buildings. Wellington W. Taber, the head of the department, had turned over the Chevrolet coupe in question to Green for his use in connection with his work. Nothing was said one way or the other about Green using the car for his own personal use. It is not claimed that any one ever gave him express permission to do so, but it is said that the implied consent of Mr. Taber, or some other employee of the city, to so use the car can be spelled out from the conduct of the parties, and that such permission is binding on the city.

The accident happened on Sunday. Green had taken the car, filled it with gasoline from the city's tank, and driven to Sylvan Beach, a resort on Oneida lake some forty miles from Syracuse, to get his clothes, which he had left in a room which he had been occupying over the week-ends during the season. On his way back to Syracuse the collision occurred. While at Sylvan Beach on the day in question he saw a Mr. McGraw, the owner of an apartment house in Syracuse, concerning a complaint relating to the absence

of lights in the hall of the building. The principal object of Green's trip, however, was for his own personal convenience; the interview with McGraw was purely incidental. The journey would never have been made but for Green's private purpose. Under such circumstances, it cannot be said that he was on the city's business at the time. (*Fox* v. *City of Syracuse*, 231 App. Div. 273; affd., 258 N. Y. 550; *Matter of Marks* v. *Gray*, 251 id. 90.)

The evidence of Green's purpose in making the trip is substantially the same on this trial as it was in plaintiffs' actions against the city. The defendant insurance company cannot be held liable upon the theory that the car was being used in the city's business at the time. The trial court so charged the jury, and the authorities so hold.

We, therefore, get back to the question whether the city ever gave its consent, either directly or indirectly, to Green's use of the car for his own individual purpose. Concededly, no express consent has been shown that he might do so, and our inquiry may accordingly be narrowed down to whether, by any fair inference, such permission can be spelled out from the surrounding circumstances. That was the charge of the trial court, and is the law of the case. The jury has resolved that question in favor of the plaintiffs. I do not think that there is any evidence to sustain such a finding.

There is ample evidence to show that Mr. Taber, Green's superior, knew that Green was using the car as if it was his own, and that Taber failed to protest. The chief of the fire department and other city employees might have had the same information. Green kept the car in a private garage at his residence; he had used it on numerous prior occasions to drive to Sylvan Beach and outside the corporate limits of Syracuse; he had a previous accident while using the car for his individual purpose, and had repaired it at his own personal expense, and this fact came to Mr. Taber's knowledge, if not to other city employees. From all this information a tacit consent on the part of Mr. Taber, as well as the fire chief, for Green to drive the car for his own convenience and pleasure, could doubtless be inferred. But the consent which would make the defendant liable under this policy is not the willingness of the superintendent of buildings, or the fire chief, or some other employee of the city, but of the municipality itself. These men had no power or authority to give consent to Green to use this car for his personal use, and their act in so doing does not bind the city. (*Downing* v. *City of New York*, 219 App. Div. 444; affd., 245 N. Y. 597; *Aspinall* v. *City of New York*, 221 App. Div. 753; affd., 246 N. Y. 644; *Fox* v. *City of Syracuse*, 231 App. Div. 273, 276; affd., 258 N. Y. 550; *Fox* v. *Employers' Liability Assurance Corp., Ltd., London,*

239 App. Div. 671, 674; *Cunningham* v. *City of Niagara Falls,* 242 id. 39, 41.)

There is no evidence to support a finding of implied consent on the part of the city itself.

As a matter of fact, the city had no right to extend to Green, or to any other individual, the privilege of using this car for his own individual purpose. Municipal property is not purchased at public expense for the personal use of a favored few.

The People of the State have spoken in a very emphatic manner upon this subject, and have incorporated in the fundamental law of the Commonwealth a prohibition against a county, city, town or village giving any money or property, or loaning its money or credit to or in aid of any individual. (N. Y. Const. art. VIII, § 10.) The municipality was not created for the purpose of entertaining its employees. (*Gamble* v. *Village of Watkins,* 7 Hun, 448; *Hodges* v. *City of Buffalo,* 2 Den. 110.)

But we may pass the legality of any consent on the part of the city, because there is no evidence that any such approval was ever given.

It is claimed by the plaintiffs that item 6 of the policy, which states that the purposes for which the insured automobiles are to be used include " business and pleasure," shows an intent on the part of the defendant to insure the driver of the car while using it for his own pleasure or individual convenience. Ordinarily a corporation, municipal or otherwise, can have no pleasure, and when the word is applied to a corporate body it is meaningless. But the city maintains parks and playgrounds for the entertainment and pleasure of the public, and motor cars are necessarily used in that connection. It may well be that the city, in taking out this policy, and in its desire to cover its liability from every possible angle, caused the word " pleasure " to be inserted as one of the purposes for which the insured cars were to be used, in order to include their use while employed in connection with any park or play-ground activity. I do not think that it can be said that this pro-vision shows any purpose on the part of either party to the contract to cover a situation where some city employee takes the car, with-out authority from the municipality, and uses it for his own personal pleasure.

Respondents urge that permission under the policy means a per-mission existing in fact, and that the validity or legality of the consent does not matter, so long as it was actually given by some employee of the city. They cite, in support of such contention, *Lipedes* v. *Liverpool & London & Globe Ins. Co.* (229 N. Y. 201); *Suetterlein* v. *Northern Ins. Co.* (251 id. 72), and kindred cases. I

have no fault to find with the holdings in those cases. They are clearly distinguishable in many ways from the instant case. There was no consent here, valid or otherwise, on the part of the city itself. Neither the common council, nor any board, having authority in the premises, ever acted in the matter, or had any knowledge of Green's appropriation of the car for his own use, so as to require them to act or to be charged with having given their tacit permission to such use. The authorities cited have no bearing on the question presented to us.

The right of a judgment creditor to recover in an action brought under section 109 of the Insurance Law is identical with the insured's right to recover on the policy, where he has paid the judgment and is seeking indemnity from the insurance company. The cause of action in one case is no greater and no less than in the other. The plaintiffs here stand in the shoes of Green. The terms and conditions of the contract are binding upon both. Any defense to an action brought by the insured is available to one brought under the statute. (*Coleman* v. *New Amsterdam Casualty Co.*, 247 N. Y. 271; *Weatherwax* v. *Royal Indemnity Co.*, 250 id. 281.)

If Green had paid these judgments, no court would permit him to recover under this policy. That would be opening a door which would lead to the abuses which the People of the State have attempted to put a stop to by the fundamental law of the Commonwealth, and by numerous adjudicated cases, the justice of which principle is recognized by all.

Our decision on the former appeal in these cases (*Fox* v. *Employers' Liability Assurance Corp., Ltd., London*, 239 App. Div. 671) is in no way decisive of the questions now before us. We have never held that the plaintiffs had a cause of action against the insurance company. On the first trial of these actions, the trial court held that the decision in *Fox* v. *City of Syracuse* (231 App. Div. 273) was *res adjudicata* upon the question of Green's permission to drive the car and whether he was operating it in the business of the city; the judgment roll in the city action was received in evidence, and plaintiffs were foreclosed from showing, if they could, that Green was engaged in the city's business at the time of the accident, or that the city had put its stamp of approval upon his use of the car for his own personal convenience and pleasure, and a nonsuit was granted. We simply held that the defendant could not try its case in that way; that the issue tendered in the city action was consent under section 59 of the Vehicle and Traffic Law, while in the present case the controversy related to consent under the policy, and, therefore, as there was not an adjudication in the city case of the precise or exact issue before the court in the present

actions, there could be no estoppel, and plaintiffs should be permitted to submit whatever evidence they had on the issue involved, and not be precluded from a recovery simply because of the decision in the city case. Plaintiffs have now had their day in court; they have been afforded ample opportunity upon the second trial to present their evidence and to prove, if they could, that Green was operating the car in question at the time of the accident in such a manner as to bring him within the protection of the policy. Unfortunately for the plaintiffs, the privilege thus accorded them has been unavailing so far as they are concerned; they have failed in their proof to make out any cause of action against the defendant upon the policy.

For the reasons stated, we think that the judgments appealed from cannot stand, and that they must be reversed and the complaints dismissed.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

In each action: Judgment and order reversed on the law, with costs, and complaint dismissed, with costs.