(AMERICAN) LUMBERMENS MUT. CASUALTY CO. OF ILLINOIS v. TIMMS & HOWARD, Inc., et al.

SAME v. SCHILL et al.

Nos. 93, 94.

Circuit Court of Appeals, Second Circuit.

Dec. 18, 1939.

Oscar J. Brown, of Syracuse, N. Y., for appellant.

George H. Bond, Jr., and Bond, Schoeneck & King, all of Syracuse, N. Y., for appellees in No. 93.

Clifford H. Searl and Searl, Langan & Searl, all of Syracuse, N. Y., for appellees in No. 94.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

■ Though these cases disclose procedural oddities, they show no attempt at procedural economy. The plaintiff seeks adjudications of non-liability on its policy of bodily injury and property damage liability issued to defendant Timms & Howard, Inc., on an automobile truck, on the ground that the particular accident which has resulted in the threat of claims against its insured occurred when the truck was being used otherwise than as provided in the policy. It has, however, brought two actions for declaratory judgments, one against its insured and the latter's employee, the operator of the motor vehicle in question, and the other against the potential claimants, six in number—the mother, two brothers, two sisters, and a friend of the operator who rode the truck at the time of the accident. No good reason exists for such duplication; in fact the two actions were tried together and adjudicated on the same evidence. A single action against all is usual and natural (compare cases collected by Borchard, Declaratory Judgments and Insurance Litigation, 34 Ill. L.Rev. 245, 250, 255–258); the unnecessary second suit here seems at least partly responsible for some of the oddities now placed before us. With the example set by the plaintiff, defendants were perhaps under no obligation to shorten litigation by presenting their own damage claims.

Hence the judgments in their favor are, in effect, an authorization and a mandate for from one to perhaps six negligence actions over the accident. The cases were tried before the new rules of civil procedure became effective.[1] 28 U.S.C.A. following section 723c. At least hereafter under those rules, cross-claims between the defendants, when properly sued together, afford a means of determining the entire controversy with a minimum of procedural steps. Rule 13(g).

The first, perhaps the chief, oddity presented here is an "advisory" verdict of the jury answering a special question submitted to it by agreement of the parties. The one verdict was then entered in each case and accepted by the judge, though he treated it as not binding upon him, for he made his own formal findings of fact and conclusions of law and entered judgments upon them about a year after the verdict was returned. By what steps the parties came thus to try their cases is not clear; when we learn about the jury from the record it is present in court, ready to hear the evidence in a capacity manifestly agreed upon already. The verdict is repeatedly designated by all counsel and the court as advisory, and it is so described in the court's findings and judgments.

The matter is important because the plaintiff now insists on its right, notwithstanding an adverse verdict, to challenge the vital holding below that the truck was within the policy coverage at the time of the accident. It says that the verdict was not final and moreover that the question asked was such as to make the answer given not entirely destructive of its case.

■ We shall have more to say as to the proper interpretation of the verdict later; now we turn our attention to its effect. Why the parties agreed to an advisory verdict does not appear. Counsel now suggest that it was taken because these were actions for declaratory judgments. But it is quite clear that the declaratory judgment is not a means of evading trial by jury, and that jury trial may be had as of right in a declaratory action such as this which at bottom concerns the duty of a contract-obligor to pay money on the fulfillment of a condition. 28 U.S.C.A. § 400 (3); Rule 57, F.R.C.P.; Pacific Indemnity Co. v. McDonald, 9 Cir., 107 F.2d 446; United States F. & G. Co. v. Koch, 3

---

[1] But the New York rules of joinder governed, and these are now most liberal.

Cf., e. g., Civil Practice Act, §§ 193, 264, 271.

Cir., 102 F.2d 288; Ætna Casualty & Surety Co. v. Quarles, 4 Cir., 92 F.2d 321; Borchard, op. cit. supra, at page 258 of 34 Ill.L.Rev.; Borchard, Declaratory Judgments (1934) 119–121. Perhaps the parties were misled by the fact that the defendants, in addition to their denials and defenses, had added counterclaims for reformation of the policy for mistake. This issue, however, was not tried at all, but has merely been reserved for future consideration in the event of our reversals of the judgments below.

■ Whatever may be the explanation of their course of conduct, it seems clear that in law the parties effectively waived their jury right by not claiming it. New York Civil Practice Act, § 426; McGraw v. Bank of Richmondville, 238 App. Div. 437, 264 N.Y.S. 416; MacKellar v. Rogers, 109 N.Y. 468, 17 N.E. 350; cf. Federal Rule 38. That being so, there seems no reason why the parties, with the approval of the judge, should not agree that an advisory verdict be taken as in equity and with the same weight as such a verdict had in equity. New York Civil Practice Act, § 430; cf. Federal Rule 39 (c).[2] And in equity such a verdict was only the discretionary right of the court to have its "conscience enlightened," Vosburg Co. v. Watts, 4 Cir., 221 F. 402, 408, so that the review on appeal is from the court's judgment as though no jury had been present. Carroll v. Bullock, 207 N.Y. 567, 101 N.E. 438; Carroll v. Deimel, 95 N.Y. 252; Federal Reserve Bank of San Francisco v. Idaho Grimm Alfalfa Seed Growers' Ass'n, 9 Cir., 8 F.2d 922, 925, certiorari denied 270 U.S. 646, 46 S. Ct. 347, 70 L.Ed. 778; 3 Moore's Federal Practice 3031. True, the judge has discretion to set aside such a verdict, but his exercise of discretion is not reviewable. Colie v. Tifft, 47 N.Y. 119. Under the circumstances, therefore, the verdict, whatever it may mean, cannot properly be a factor finally determinative of this appeal. And as we point out below, we do not think it can be given the effect plaintiff desires, in view of the particular circumstances of this case, even if we should wish to

accord it more weight than would be granted it under the decisions cited.

■ We turn, therefore, to a consideration of the plaintiff's claim that the truck at the time of the accident was being used merely on a pleasure trip outside the coverage of the policy. The policy itself was a general one for bodily injury and property damage liability from the use of automobiles, divided into classes of "pleasure and business" cars and "commercial" cars, the particular coverage being shown by endorsements or schedules. The endorsements here showed that the policy covered a 1½-ton Ford truck owned by the insured, Timms & Howard, Inc., "book dealers" of Syracuse, New York. While it is not specifically stated that this truck is not within the classification "pleasure and business" (defined as "personal, pleasure, family and business use"), we may accept the assumption of all, incorporated in a finding of the court, that it was not within this classification, but was a "commercial" car. "Commercial," in turn, is defined "as the transportation or delivery of goods, merchandise or other materials, and uses incidental thereto, in direct connection with the named insured's business occupation as expressed in Declaration 1" (i. e., book sellers). This definition provides the controlling language for the contract; it is reinforced by other general provisions, such as that the policy applies only to losses sustained while the automobile "is owned, maintained and used for the purposes stated as applicable thereto in the declarations."

John A. Schill, Jr., defendant together with the insured in the first action, was employed by the insured in a particular branch of its bookselling business as manager of its rental library department. The company had "branches" largely scattered over New York State and Pennsylvania. These were really stores, particularly drugstores, with which the insured left a rack containing a number of books to be rented upon a commission basis. The insured serviced these branches every two weeks or every month, supplying new books and

---

[2] Rule 39 (c) authorizes an advisory jury "in all actions not triable of right by a jury." This might be thought to limit its use to those actions which are not within Rule 38(a), "jury trial of right," and thus exclude *jury-waived* actions. Cf. 3 Moore's Federal Practice 3031, note 2. But it is not believed that this rule was intended to, or does, restrict the right of the parties to agree to such a verdict; and if the court takes the parties at their word and gives the verdict only such weight as they wished, its action seems no more reviewable than in the equity cases cited hereinafter.

collecting receipts. Schill drove the truck in question in this work. He was also charged with the duty of extending the lending business and developing new outlets for it. He received a substantial salary, plus a bonus with commissions, which at times was higher than that of the president of the concern. He took care of the garaging of the truck (there was no available garage in the city block wherein the insured's book store was located) and he procured gasoline, oil, and incidental repairs for it, being reimbursed therefor by his employer.

On Saturday, September 3, 1937, Schill asked permission to take the truck over the week-end for a visit, together with members of his immediate family, with some relatives in Meriden, Connecticut. Such permission was granted, and the accident, causing injuries to the occupants of the truck, occurred early the next morning when he had gone thirty or thirty-five miles east of Syracuse on this trip.

If there were no other facts than these, it would seem clear that the truck was being used at the time of the accident for Schill's own purposes, and not for those of the business, and hence was not within the policy coverage. Plaintiff relies on certain other facts as emphasizing the personal nature of the trip, such as the absence of books or library equipment in the truck at the time, the presence there of seven persons, five on boxes and pillows temporarily placed in the body of this delivery truck, the early Sunday morning start, and so on. We need not rehearse this evidence in detail, for defendants concede that the proposed visit to their Meriden relatives was a major purpose of this trip. They rely, however, on the existence also of a business purpose, being pursued at least at the time of the accident.

Both Schill and Timms, the president of the corporation, produced as witnesses by the plaintiff, testified that Schill was to see a drugstore proprietor in Pittsfield, Massachusetts, in the endeavor to secure the installation of the lending service at that store. Timms' own evidence makes this objective a direct condition of the trip, for he stated that he granted Schill permission to take the truck for the Meriden trip, Schill to buy the gas and oil, "provided he went to Pittsfield first, because we were very interested in getting a line of rental libraries to the east," and "the Rice Pharmacy in Pittsfield was the main place we wanted to go to." He added, "I suggested it would be a very good time for him to call, Sunday morning being a very good time to contact this druggist in Pittsfield, which Mr. Schill agreed to do." Both he and Schill stated also that this prospect was developed out of negotiations with one Sobell of Schenectady for the purchase of his chain of lending libraries; when the purchase fell through and since Sobell was giving up his chain anyhow, they planned to approach the Pittsfield store to which he had directed them.

Outside of the testimony of plaintiff's claim adjuster as to the procuring of affidavits from Timms and Schill (about which we shall have more to say later) and the policy itself, this testimony of the two men offered by the plaintiff was the only evidence, and the question was presented for decision solely upon it and upon the inferences to be drawn from it. The court found specifically as facts that the accident occurred while the truck was being used for the purpose for which it was insured, and further that it was being used for commercial purposes, repeating the policy definition of "commercial." In separate conclusions of law, and in declarations in the judgments, the court restated the vital portion of these findings with its adjudication that the truck was being used in accordance with the terms of the policy at the time of the accident and that hence plaintiff was bound to defend actions and to pay judgments, within the policy limits, against its insured based on the accident.

The plaintiff claims, however, that either the sole or at least the dominant purpose of the Meriden trip was non-commercial and that hence there cannot be liability under the policy for the accident. And in this connection it takes some comfort from the advisory verdict, in spite of the latter's adverse appearance. The question, which the jury answered in the affirmative, began, "Was the motor vehicle in question being used in any way at the time of the accident herein for commercial purposes?" and then it proceeded to state the definition of the term "commercial" from the policy which is quoted above. The plaintiff's claim is that a use "in any way" for commercial purposes is not sufficient to bring the truck under the policy. The latter part of the question, however, containing as it does the contract definition of "commercial," called for a use of the truck "in direct connection with" the insured's business as book dealers, and the jury by its answer found such a use. Hence a fair

paraphrase of the verdict would be that at the time of the accident the truck was being used in some way in direct connection with the insured's business.

But plaintiff claims that such a use is not within the policy coverage and relies on certain New York cases as sustaining the point that the commercial use required must be the dominating one, without which the journey would not have gone forward. Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181; Fox v. Employers' Liability Assur. Corp., 243 App.Div. 325, 276 N.Y.S. 917, affirmed without opinion 267 N.Y. 609, 196 N.E. 604. Whether these cases do state broadly such a rule of automobile liability insurance, and whether then it goes beyond the teaching of other cases to the effect that such use need be only one objective, along with a personal one, in short what subtle nuances of emphasis are needed to state the present New York law,[3] we feel need not be determined by us here. For the policy which the plaintiff and other insurers offer to the public as substantial automobile coverage for business proprietors is far from a model of clarity, and the offerors should take some of the risks of the confusion it engenders. Here, indeed, the plaintiff did so below by proposing, together with the defendants, the form of question which the court submitted to the jury. Clearly it then thought the answer would settle the substantial issue, not a sham or immaterial one. If the judge did accept this proffer at its face value, it does not lie in the plaintiff's mouth to criticize him for so doing. And we cannot say the judge did so, for, as he was entitled to do, he reached his own decision upon all the evidence, and, as he says, "upon the memoranda submitted on behalf of both parties, and after due deliberation" (in fact, as appears, for many months).

True, his findings were not detailed and particularized, but they follow the form of the plaintiff's "Requests to find," several of which he appears to have accepted literally.

We think, therefore, that the plaintiff cannot show error in the conclusion of the District Court that the policy, as written, covered the truck at the time of the accident. Moreover, by New York statute (referred to in the defendants' answers, but apparently not considered further below) the policy must take a broader form. Under N. Y. Vehicle and Traffic Law, Consol.Laws, c. 71, § 59, the owner of an automobile is held responsible for damages caused by its negligent driving when the car is taken by his consent, Young v. Masci, 289 U.S. 253, 53 S.Ct. 599, 77 L.Ed. 1158, 88 A.L.R. 170, and by this statute and by Insurance Law, Consol.Laws, c. 28, § 109(3) and (4), a policy of automobile liability insurance in New York must be read as containing a provision insuring the owner against liability for personal injury or property damage, resulting from negligence in the operation of the motor vehicle "in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner."[4] This provision was considered in Fox v. Employers' Liability Assur. Corp., supra, where consent was found lacking. The plaintiff claims that the insured's president had no authority to give consent for use of the truck on a pleasure trip. The court, however, expressly found consent by the insured. As we have seen, this is now settled to have been a trip not exclusively for pleasure, and, at the very least under the statute, a managing officer of the insured has authority to give consent under such circumstances. Compare

---

[3] The Marks case concerned compensation insurance where was involved the possibly higher statutory standard that the workman's injury must arise "out of and in the course of his employment." This case was relied on in the Fox case, wherein, however, the business errand was a pure afterthought coming to the employee by chance when he was already at a beach for pleasure. See Fox v. City of Syracuse, 231 App.Div. 273, at page 275, 247 N.Y.S. 429, where the employing city was held not liable in the same matter. For cases which perhaps suggest a less strict rule, see Clawson v. Pierce-Arrow Motor Car Co., 231 N.Y. 273, 131

N.E. 914; Western Casualty & Surety Co. v. Independent Ice Co., 190 Ark. 684, 80 S.W.2d 626; cf. also Drewek v. Milwaukee Automobile Ins. Co., 207 Wis. 445, 240 N.W. 881 (Rosenberry, C. J., and Wickhem, J., dissenting); Williams v. American Automobile Ins. Co., 5 Cir., 44 F.2d 704; Snyder v. National Union Indemnity Co., 10 Cir., 65 F.2d 844, 848, certiorari denied 291 U.S. 665, 54 S.Ct. 440, 78 L.Ed. 1056.

[4] In the revision of the Insurance Law, effective January 1, 1940, all reference to business is omitted. Laws 1939, c. 882, §§ 143, 169.

Foster v. People's Gas & Electric Co., 230 App.Div. 771, 243 N.Y.S. 564, affirmed 256 N.Y. 594, 177 N.E. 154; Clarke v. Mason Au & Magenheimer Confectionery Mfg. Co., 240 App.Div. 1001, 268 N.Y.S. 290, affirmed 264 N.Y. 661, 191 N.E. 614.

█ Certain rulings of the court remain for consideration. The most important is that excluding an affidavit executed by Timms at the behest of plaintiff's adjuster a few days after the accident. Plaintiff considered this affidavit so important that it offered the adjuster as its first witness and tried to secure the admission of the document without any foundation of Timms' testimony or otherwise as to the accident itself. The importance of the affidavit is obviously more because of what it does not, rather than what it does, contain. It is quite brief, amounting to but a short paragraph. It has the sentence, "I agreed to let him take the truck with the understanding he was to pay for all gasoline and oil and any minor repairs on the trip," but has no reference to any proposed stop in Pittsfield. Plaintiff claims that under Larkin v. Nassau Electric R. Co., 205 N.Y. 267, 98 N.E. 465, the statement was admissible as bearing on his credibility as well as on the facts.

Normally such a statement is admissible for the purposes claimed, and the fact that it is negative in character is not ground for its exclusion, for its weight and effect are for the trier of facts. Larkin v. Nassau Electric R. Co., supra. But the circumstances of its exclusion are not the least odd of this curious case. When first offered at the beginning of the trial, the court indicated some readiness to accept it in the case of the insured alone, but some doubt whether admitting it as against the defendants in the first case alone might not unduly confuse the jury. Then when objection was made of a lack of showing of Timms' authority to sign for the corporation, the court sustained the objection "at this time." When Timms took the stand, he was examined several different times as to the giving of this affidavit, and though counsel for the defendants in the second case (that against the passengers in the truck) repeatedly objected that the testimony was not admissible against them, and some of those objections were sustained, yet plaintiff succeeded in getting in evidence a full account of the matter, including Timms' own explanation of the omissions in the affidavit. His story was that the adjuster called upon him at his store, asked him questions which he answered, and then wrote out the statement which he signed, and he said nothing about the Pittsfield affair because he was not asked. No objections were made by the attorney for the insured, nor was the affidavit then offered.

The same course was followed with respect to an affidavit by Schill containing like absence of reference to the Pittsfield errand, which was first offered through the adjuster and later formed a subject of examination of Schill when a witness. But that suffered a different fate. At the close of the evidence, plaintiff offered Schill's affidavit in evidence, claimants' counsel objected, but the court said, "I will receive it on the question of credibility." Then plaintiff's counsel said, "I believe you reserved on Exhibit 1. I now offer the statement of Mr. Timms," to which the court replied, no objection having been made, "I will exclude that." Exception was taken and the incident ended. At the later hearing before the court after the jury's verdict had been received, no attempt was made to secure its admission.

It will be noticed that plaintiff was eventually permitted full examination, and in effect cross-examination, of its own witness, Timms, and that in this examination it had had substantial benefit from the existence of the affidavit. As matters stood, it probably was actually more persuasive when kept from the jury's sight than if laid before them. Indeed they seem to have made short shrift of Schill's similar affidavit (they were out only twenty minutes). Plaintiff made no attempt to explain its offer or to meet or discuss whatever objection the court had to the admission of the document, though the court had already indicated its line of thought, to wit, that the affidavit, while perhaps admissible against the insured, was not as against the others, and partial admission was too confusing to the jury. Whether or not this was sound, it was at least a point as to which the plaintiff should have stated its claims and the extent to which the admission was claimed. And the plaintiff, by dividing its claim into these two separate lawsuits, was at least partially responsible for the judge's view that the two sets of defendants occupied different positions before the court.

504

Under all the circumstances we think it is doubtful if the plaintiff suffered harm by what transpired. We are admonished not to reverse for an error in the exclusion of evidence, unless refusal to do so appears to be "inconsistent with substantial justice." Federal Rule 61, 28 U.S.C.A. following section 723c; 28 U.S.C.A. § 391; Equity Rule 46, 28 U.S.C.A. following section 723. It is significant that the judge, who took the full responsibility of decision, notwithstanding the presence of the jury, reached the same result. Exclusion of evidence before an advisory jury when it also means an exclusion from its consideration by the judge may be ground for reversal, Carroll v. Deimel, supra, but not where he had had the full force of the evidence, as here.

Two other rulings on evidence seem inconsequential. One was an exclusion of a question to Schill as to whether he had taken his vacation (prior to the accident) in Connecticut, as an apparent foundation for the inquiry why he had not then visited the Pittsfield store. The other was whether he had made a claim for workmen's compensation benefits against his insured, apparently asked with the hope of a negative response. Schill was plaintiff's witness; this tends to be cross-examination on collateral issues having little, if any, probative value on the questions at issue. Exclusion was well within the court's discretion.

A final ruling was on a motion for a new trial for the newly discovered evidence that after all there was no Rice Pharmacy in Pittsfield. Defendants' answer to this was that Sobell made a mistake in the name when he gave it to Timms & Howard, Inc.; that the Rice Pharmacy was "fifteen miles" away in North Adams and the drugstore actually in mind was the Gilbert Pharmacy of Pittsfield. Denial of this motion (which we surmise to be the court's action from the fact that judgments were rendered for the defendants) was well within the court's discretion. Plaintiff probably could have explored this matter at the trial; but even if it be held new evidence, the confusion of names was a small matter at most, with no significant bearing on the issue. And as we have pointed out before, the act of judgment was by the court, and was made after this situation had been made clear to it.

Affirmed.