## SUTCLIFFE et al. v. AMERICAN LUMBERMENS MUT. CASUALTY CO. OF ILLINOIS.

### No. 77.

Circuit Court of Appeals, Second Circuit.

Nov. 12, 1940.

Writ of Certiorari Denied Jan. 6, 1941.

See 61 S.Ct. 442, 85 L.Ed. ——.

Francis J. Nicosia, of Brooklyn, N. Y. (Joseph Giordano, of Brooklyn, N. Y., on the brief), for plaintiffs-appellants.

Fred L. Gross, of Brooklyn, N. Y. (Gross & Keck, of Brooklyn, N. Y., on the brief), for defendant-appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The question presented in this case is whether defendant's liability on a policy of public liability automobile insurance is limited to $5,000 for one person and $10,000 for one accident, or extends to $25,000 for one person and $50,000 for one accident. The district court found for the lower limits, in accordance with defendant's claim, and plaintiffs appeal to secure an increase in the award made them. The decision therefore turns upon the meaning to be attached to a policy of automobile insurance—a form of contract which seems to possess an affinity for ambiguity. Cf. (American) Lumbermens Mut. Cas. Co. v. Timms & Howard, Inc., 2 Cir., 108 F.2d 497, 502.

The plaintiffs sue directly on the policy as judgment claimants against the assured, pursuant to N. Y. Insurance Law, Consol. Laws c. 28, § 109, now incorporated into Insurance Law, §§ 143, 167. Their action, originally instituted in the Supreme Court of New York, was removed to the district court by the defendant because of diversity of citizenship of the parties. The judgment sued upon was rendered by the Supreme Court of New York and was for $6,050.52, $7,500, and $25,000, with interest and costs, against the assured, Maxweld Corporation, and in favor of the three plaintiffs respectively. It was affirmed in Cutter et al. v. Maxweld Corporation, 256 App.Div. 948, 10 N.Y.S.2d 394; Id., 281 N.Y. 467, 24 N.E.2d 129. Recovery was based upon the negligence of the corporation's president, Earl C. Maxwell, while acting for the company, in injuring two of the plaintiffs and causing the death of the intestate of the other in an automobile collision on a New York highway in 1934.

Maxwell himself died of injuries sustained in the accident, and under the then New York law his estate could not be held to respond in damages for the accident. Cf. Herzog v. Stern, 264 N.Y. 379, 191 N.E. 23, certiorari denied 293 U.S. 597, 55 S.Ct. 112, 79 L.Ed. 690; and N. Y. Decedent Estate Law, § 118, added by Laws 1935, c. 795, § 1.

The automobile which Maxwell was operating at the time was one covered by the policy in question. Defendant's claim herein rests upon a statement in a rider attached to the policy in connection with a description of the car, that it "protects the interests of Earl C. Maxwell." To support its claim, defendant asserts that Maxwell was the owner of the car, and refers to such facts, shown in the trial of the New York action, as that the car was licensed in his name and that he had recently taken title to it under a conditional bill of sale. But the jury in the New York action answered affirmatively two questions: first, that the defendant corporation was the sole owner of the car, and second, that the car was being used in defendant's business at the time of the accident. The affirmance of the judgment on the verdict by the New York courts would appear to us, however, to settle this issue against defendant (cf. Good Health Dairy Products Corp. v. Emery, 275 N.Y. 14, 9 N.E.2d 758, 112 A.L.R. 401), and this result does not seem impaired by reason of the fact that simultaneously with its affirmance the Court of Appeals reversed a judgment in favor of other plaintiffs upon grounds asserted to be inconsistent with the assured's ownership of the car. The parties herein are bound only by the adjudications in their own case. In any event, however, the issue of ownership of the car is not claimed and does not appear to be decisive of the question here presented.[1] That must be answered from the policy itself.

The policy consisted of a face page of printed "Special Conditions," containing appropriate blank spaces, filled out as hereinafter described, and two inside printed pages, containing extensive "General Conditions." There was also attached a rider containing typed descriptions of the cars covered and presenting the substantial problem in the case.

■ Under the "Special Conditions" it was disclosed that the "Named Assured" was the Maxweld Corporation, of a certain Brooklyn address, "mfrs. of tanks"; that for the place of principal use and of garaging of the automobile the "Schedule Attached" should be seen; and that the policy period was for a year within stated dates. Following a provision showing, among other things, that the passenger cars would be used for both "Business and Pleasure," there appeared the important Special Condition 8, which read: "The Automobiles covered by this Policy, the kind of insurance provided by this Policy, the limits of liability assumed by the Company and the premiums to be paid by the Assured, are stated below. No liability is assumed for any coverage unless a specific premium charge is entered therefor in this schedule nor for collision unless the type of coverage and the amount to be deducted from each claim are also indicated in the space provided."

As a part of this condition the policy contained a block space with appropriate headings so that the cars covered and the kind of insurance provided might be described. Typed across it were the words in capitals, "See Schedule Attached"; but in columns for the entering of premiums for various types of insurance there were entries which defendant and the court below considered important as showing defendant's liability within the ordinary policy limits. Under the heading "Liability (Limits $5,000 One Person, $10,000 One Accident) Premium" appeared the figures 213.00, while under the heading of Increased Public Liability Limits Premium (which again said, "See Schedule") were the figures 51.87. There were also the figures 13.00 in the column for Property Damage Premium, and the word "nil" was written in the column for Collision Premium. The Total Deposit Premium was stated to be $277.87.

The court below ruled that these entries alone served to show a contract covering the Named Assured for the 5- and 10,000 limits because a premium charge of $213

---

[1] A finding of the assured's ownership would, however, render the defendant liable, under New York law, at least to the extent of the ordinary policy limits. (American) Lumbermens Mut. Cas. Co. v. Timms & Howard, Inc., 2 Cir., 108 F.2d 497, 502; N.Y.Ins.Law, § 109, supra.

was entered therefor. But we do not see how this entry can be considered a self-executing one, since the printed condition requires a statement of the cars covered, and forbids liability for any coverage unless a specific premium is entered therefor—which seems to apply to separate coverage for each car—and the schedule is definitely referred to as a part of the description. It would seem as logical to conclude that these entries also covered increased public liability limits, since a premium was charged for them; but the rider shows that the intent was not to treat all the cars covered by the policy alike. The use of a schedule as a rider seems explained by the need for more space than the face of the policy afforded; while the separate entries of the premiums seem occasioned by the column headings, coupled with the fact that the higher premiums are found as an added percentage of the ordinary premiums, depending on the kind of car and its location. (The block space also contained entries with respect to the kind of car and the territory involved which would give information necessary in determining the appropriate rates.) We are clear that the coverage on each car cannot be made clear without incorporating both the description of the car and the definition of the type of coverage found in the rider.

Of the other Special Conditions, one asserted that the Named Assured was the sole owner of the automobile "except as follows:" but no exception was entered. Another stated that the policy was made and accepted "subject to all the Special Conditions and General Conditions, together with such other provisions or agreements as may be added hereto by endorsement." The "In Witness" clause and the signatures of the company's officers followed.

Turning to the typewritten attached schedule, we find its first statement to be "The following cars are covered by policy to which this endorsement is attached." Then four cars were described under appropriate column heads giving the year, the make, the type of car, and the motor and factory numbers. The car here in question was the last one listed, a 1934 Buick Sedan. Succeeding column headings called for entries under the titles "Protects Interests of," "Location," "P. L. $10000/$20000," "P. L. $25000/$50000," and "P. D. $5000." The entries for this

Buick under each of these heads were "Earl C. Maxwell," "Northport, N. Y.," "nil," "40.64," and "nil." It appears to be undisputed that the premium charge of $40.64 was the correct and full premium for a policy of the stated increased limits on an automobile of the kind listed when located at Northport, New York, and that such premium was actually paid. It is therefore settled that the increased limits actually applied on the car in question for the protection of some one, and the sole issue is whether they afforded protection for Earl C. Maxwell alone, and not at all for the Named Assured, the Maxweld Corporation, or whether they afforded protection for the corporation.

█ Of the other three cars listed and described in the schedule, there was shown for the first, a Dodge—for "Earl C. Maxwell, Northport, N. Y."—a premium of $40.64 for the increased liability; for the second, a 1931 Buick—"Harry A. Franz, Forest Hills, L. I., N. Y."—a premium of $54.05 for Public Liability, limited to $10,000/$20,000, and $13 for Property Damage, limited to $5,000; and for the third, a Ford Roadster—"Maxweld Corp., Brooklyn, N. Y."—a premium of $129.54 for Public Liability, limited to $25,000/$50,000. The columns of premium charges were then totaled, making $54.05 for the $10,000/$20,000 Public Liability Limits, $210.82 for the $25,000/$50,000 Public Liability Limits, and $13 for the Property Damage, and with a grand total of $277.87 (the same amount as was shown in Special Condition 8, on the face of the policy). There followed a statement that this was "attached to and forming part of Policy No. * * *"—giving the number of the policy in question—"issued to Maxweld Corporation, Brooklyn, N. Y.," and the signature of the company's representative.

It is to be noted that each of these premium entries covers the full premium for the entire public liability involved, not merely that portion of the charge attributable to the increased liability limits. No intent is shown here to treat the two liabilities separately. Nor is there particular significance in the entry of the Maxweld Corporation for the Ford Roadster. That entry was not necessary to define liability, but was desirable to preserve the symmetry of statement and add to clarity.

█ Further interpretation of the policy must, of course, turn upon the "Gen-

eral Conditions," which are instructive. Only certain of them need be referred to herein, though the others are entirely consistent with our conclusion that whoever else may be protected, the "Named Assured" herein is certainly protected, and is protected to the utmost extent of any one in the premises.

The first paragraph of the "General Conditions" is the principal promissory provision of the policy. It states that, in consideration of the deposit premium herein provided, the insurance company "does hereby agree with the Assured named and described as such in the Special Conditions forming part hereof, as follows: To pay on behalf of the Assured, subject to all of the conditions of this Policy, all sums which the Assured shall become obligated to pay by reason of the liability imposed upon him by law for damages:" and thereafter follow three paragraphs, the first covering "Public Liability," the second, "Increased Public Liability Limits," and the third, "Property Damage." Each one is conditioned upon the proviso that "a premium has been charged therefor and is so indicated in the Special Conditions." "Public Liability" is stated to refer to damages, within the 5- and 10,000 limits, on account of bodily injuries or death suffered by any person or persons "due to any accident as a result of the ownership, maintenance or use (including loading or unloading) of the automobile described herein." The second paragraph, entitled "Increased Public Liability Limits," reads: "Provided a premium has been charged therefor and is so indicated in the Special Conditions, the limits stated in the Special Conditions as 'Increased Public Liability Limits,' shall be the limits of liability under this Policy, in lieu of the limits stated in the preceding paragraph." The third paragraph, dealing with "Property Damage," is not here involved.

A later condition, entitled "Extended Coverage," provides that "The terms and conditions of this Policy are so extended as to be available, in the same manner and under the same conditions as they are available to the Named Assured, to any person or persons while riding in or operating any of the automobiles described in the Special Conditions, and to any person, firm or corporation legally responsible for the operation thereof, provided such use or operation is with the permission of the Named Assured." And a later portion of this same condition states: "Any insurance under this Policy shall be applied first to the protection of the Named Assured and the remainder, if any, to the protection of any other Assured."

Finally a condition entitled "Assured and Named Assured Defined" states: "The unqualified term 'Assured' wherever used in this Policy shall include in each instance the Named Assured and any other person, firm or corporation entitled to coverage under the terms and conditions of this Policy, but the qualified term 'Named Assured' shall apply only to the Assured named and described in Special Condition 1."

We think it is made clear by these statements that, whatever insurance any person is entitled to under the policy, such insurance inures first to the Named Assured, which herein was the Maxweld Corporation. Whether the statement in the attached schedule of itself refers only to protection of Maxwell's interest in the Buick car, or is to be read as meaning that it also protected Maxwell, the result is the same. If the former was intended, the provisions of the "General Conditions" quoted above carry any protection afforded Maxwell to the Named Assured; if the latter was intended, as is perhaps more likely, the entire intent to the same effect appears in the rider. As we analyze the policy we do not think there is substantial doubt (and hence we do not consider plaintiffs' exceptions to the exclusion of evidence claimed to afford light as to its meaning); although if there is any, it should not inure to the benefit of the company which wrote the contract. Stroehmann v. Mutual Life Ins. Co., 300 U.S. 435, 57 S.Ct. 607, 81 L.Ed. 732. The result here corresponds with the popular conception that a particular car is "insured," rather than that only limited interests therein are protected.

The judgment will be modified to include the award to plaintiffs herein of the full amounts of the judgment recovered by them against the Named Assured in the New York action, together with interest and costs, and including the costs of the New York action and interest thereon as specified in the original judgment below.