440

Robert E. Hinchey, as Administrator of the Estate of John Venturini, Deceased, Appellant, *v.* Orville E. Sellers et al., Respondents.

Regis J. Petell et al., as Administrators of the Estate of Douglass P. Petell, Deceased, Appellants, *v.* Orville E. Sellers et al., Respondents.

Fourth Department, March 21, 1958.

*H. I. Greene* for appellants.

*Sidney B. Coulter* for respondents.

HALPERN, J.   This appeal presents an interesting question as to the application of the doctrine of *res judicata* and its corollaries to successive actions, growing out of a single automobile accident.

The defendant Orville E. Sellers, a resident of the State of Pennsylvania, was the registered owner of the automobile involved in the accident.   An automobile liability insurance policy had been issued to him in Pennsylvania by the National Surety Company covering the automobile.   The policy contained the usual omnibus coverage clause insuring, in addition to the named insured, any person using the automobile " with his permission ".

The defendant Orville Sellers gave the car to his son Donald Sellers to take with him to Sampson Air Base, near Geneva, New York, where Donald was stationed as a member of the United States Air Force.   It is alleged in the complaint that Donald was the equitable co-owner of the automobile with his father; this is not seriously disputed.   At any rate, it is conceded that Donald had the unrestricted right to use the automobile as he wished.

On September 6, 1951, Donald Sellers allowed Douglass P. Petell, the plaintiff's intestate in one of the cases before us, to take the car to go to the State Fair at Syracuse. However, according to the defendants' contention, Sellers did this upon the express condition that one O'Rourke would not be taken along. Notwithstanding this express condition, Petell took O'Rourke along and also took with him John Venturini, the plaintiff's intestate in the other case before us. The three men took turns driving on the trip. On the way back to camp at about 3:30 A.M., on September 7, 1951, while O'Rourke was driving, an accident occurred in Sennett, New York, and both Petell and Venturini sustained injuries as a result of which they died.

O'Rourke was a resident of New Hampshire and actions were brought by the plaintiffs, the administrators of the estates of Petell and Venturini, against him in that State. The National Surety Company declined to defend the action and an action was then brought by the plaintiffs, in accordance with New Hampshire procedure, against O'Rourke and the surety company for a declaratory judgment that it was the duty of the surety company to defend O'Rourke under the terms of its policy. The New Hampshire court held that the omnibus coverage clause of the policy did not require the surety company to defend O'Rourke or to pay any judgment obtained against him because, as it found, O'Rourke was not using the automobile at the time of the accident with the permission of the insured. The Superior Court of New Hampshire adopted formal findings, setting forth the substance of the evidence and its conclusions therefrom, in great detail. It found that on September 6, 1951, Petell had asked Donald Sellers if he could borrow the car but that the latter had refused to allow Petell to take it because O'Rourke was to go along. It seems that O'Rourke had been restricted to the base as a disciplinary measure because of his violation of regulations and Sellers did not wish to participate in aiding O'Rourke to violate the disciplinary restriction. Later, Petell sent assurances to Sellers that O'Rourke was not going along and after receiving this assurance, Sellers allowed Petell to take the car. The Superior Court transferred the questions of law involved in the case to the Supreme Court of New Hampshire without ruling upon them. The Supreme Court in answer to the certified questions held that the liability of the insurance company under the policy was governed by Pennsylvania law since the policy had been issued in Pennsylvania. The court further held that under Pennsylvania law there was no "permission" for the use of the car, within the meaning of the

policy, if the car was being used " at a time or place or for a purpose not authorized by the insured ".

The Supreme Court of New Hampshire held that: " When the accident occurred, the car was being driven at a time and place which Sellers had authorized . . . [but the] particular use to which the car was being put, insofar as it was being driven by O'Rourke and used for his transportation, was neither actually nor impliedly within the limits of the permission granted by Sellers to Petell . . . the limitation upon the permission given in this case was that the car should not be used at all if O'Rourke was a passenger " (*Hinchey* v. *National Sur. Co.*, 99 N. H. 373, 378–379).

The New Hampshire court accordingly granted a declaratory judgment holding that there was no permission within the meaning of the policy and that the National Surety Company was not required to defend the action against O'Rourke. Thereafter, the primary action against O'Rourke for the wrongful causing of the deaths of the plaintiffs' intestates was voluntarily discontinued by the plaintiffs (p. 382).

Subsequently, the present actions were brought in New York State against Orville Sellers and Donald Sellers as the co-owners of the automobile. The complaint in each action alleged in the language of the New York statute that, at the time of the accident, the automobile was being operated " with the permission, express or implied " of the defendants.

The defendants moved for summary judgment on the basis of the New Hampshire judgment, taking the position that the question of permission upon which their liability depended under section 59 of the Vehicle and Traffic Law had already been decided in their favor by the judgment. The Special Term granted the motion and dismissed the complaints. This appeal followed.

Two questions are presented upon this appeal:

(1) Whether the issue of permission of the insured under the policy, which was decided in the New Hampshire action, is the same as the issue of permission of the owner under the New York statute, so that the determination of that issue in the New Hampshire action is binding in the present actions.

(2) Even if the ultimate issue is not the same, whether the evidentiary findings by the New Hampshire court are binding in the present actions, so that, upon the basis of those findings, it may be summarily determined that the automobile was not being used with the permission of the owner at the time of the accident, within the meaning of the New York statute.

There can be little doubt but that the answer to the first question must be in the negative.

We are here concerned with that aspect of *res judicata* which is commonly referred to as collateral estoppel. The doctrine of collateral estoppel is based upon the rule of public policy '' that a question once tried out should not be relitigated between the same parties or their privies '' (*Commissioners of State Ins. Fund* v. *Low*, 3 N Y 2d 590, 595). However, the doctrine does not apply unless the issue in both actions is the same. It is clear in this case that the issue in the New Hampshire action was not the same as that in the present action. Even though the word '' permission '' appeared both in the insurance policy and in the statute, the word did not necessarily have the same legal meaning in the two contexts. The question of the meaning of the word in the policy was to be determined as a matter of contract law in accordance with the intention of the parties to the contract under the law governing the contract. The meaning of the word '' permission '' in the New York statute must be determined in accordance with the intent of the Legislature, taking into account the policy objectives which the Legislature sought to carry out.

This branch of our problem was really disposed of many years ago in a series of cases which went through this court, growing out of an accident in which an automobile, owned by the City of Syracuse and operated by one of its employees, was involved. An action had been brought against the city and the driver and a judgment had been obtained against both. Upon appeal to this court by the city, the judgment against the city was reversed on the ground that the employee was not engaged in the business of the city at the time of the accident and that the city could not give permission to its employee to use an automobile for any purpose other than the carrying on of city business (*Fox* v. *City of Syracuse,* 231 App. Div. 273, affd. 258 N. Y. 550). There was no appeal from the judgment against the driver.

The plaintiff was unsuccessful in his effort to collect the judgment against the driver and he brought an action against the insurance company which had issued a policy of liability insurance to the city, under section 167 of the Insurance Law. The plaintiff contended that the driver was covered under the omnibus coverage clause of the policy as one using the automobile with the permission of the insured. The action was dismissed by the trial court upon the ground that the prior adjudication that the city had not given its permission for the use of

the car within the meaning of the ownership statute was a binding determination that the car had been used by the driver without the permission of the insured under the terms of the insurance policy. Upon appeal to this court, the judgment in favor of the defendant was reversed and a new trial was granted, this court saying: " One of the issues litigated in the former action was consent under section 59 of the Vehicle and Traffic Law. The issue tendered in the present actions is consent under the policy. These issues are not common to both actions ". The court accordingly held that there was no binding adjudication and that the plaintiff was entitled to try out the issue of permission within the meaning of the policy de novo (Fox v. Employers' Liability Assur. Corp., 239 App. Div. 671, 674). Upon the subsequent trial of the action, it was independently determined that the driver did not have the permission of the insured within the meaning of the policy and that therefore the omnibus coverage clause did not apply and judgment was accordingly rendered in favor of the defendant. This result was affirmed both by this court (243 App. Div. 325) and by the Court of Appeals (267 N. Y. 609). (See, also, Jewtraw v. Hartford Acc. & Ind. Co., 284 App. Div. 312; 286 App. Div. 931, affd. 2 N Y 2d 788.)

The second question raised in this case is a more difficult one. The defendants' counsel argues, in substance, that the policy considerations which gave rise to the doctrine of res judicata and to the corollary doctrine of collateral estoppel also apply to the evidentiary findings of the New Hampshire court. He argues that the plaintiffs had an opportunity to try out the underlying questions of fact in New Hampshire and that they should not be allowed to relitigate those questions here. As we understand the defendants' argument on this point, they recognize, for the purpose of this argument, that the ultimate issue in this case is different from the issue in the New Hampshire case but they contend that the evidentiary findings in the New Hampshire case, as to the communications between Sellers and Petell and the conditions imposed by Sellers, are binding and, in view of those findings, the ultimate issue in this case must be decided in favor of the defendants and it must be held that the car was being used without the permission of the owners within the meaning of the New York statute. Therefore, the defendants conclude, it was proper to summarily dismiss the present actions.

This point was not raised in the Fox case and therefore we cannot regard it as a controlling precedent on this branch of

the present case. There are some dicta in early New York cases that touch upon the question but there appears to be no controlling decision on the point in this State (see discussion in 52 Col. L. Rev., 647, 661–663).

We are called upon to decide in this case whether the doctrine of collateral estoppel is applicable to evidentiary findings, so that they are binding in subsequent litigation, even though they were made in an action involving a different legal issue.

If the reach of the doctrine of collateral estoppel extends so far, it might well warrant the dismissal of these actions, despite the fact that the defendants in these actions are different from those in the New Hampshire action. In New Hampshire, O'Rourke, the driver of the car, and the insurance company were the defendants. Here, the Sellers, the owners of the car, are the defendants. The insurance company is not a party to the actions at this stage but it is interested in the result since it will be required to indemnify the Sellers against any judgment obtained against them. In view of the relationship of indemnitor and indemnitee between the insurance company and the defendants, the prior judgment in favor of the insurance company may be used defensively by the defendants (*Israel* v. *Wood Dolson Co.*, 1 N Y 2d 116; *Good Health Dairy Prods. Corp.* v. *Emery*, 275 N. Y. 14).

However, we believe that the doctrine of collateral estoppel is not applicable to evidentiary findings made in a prior action involving a different ultimate issue. In our opinion, the public policy back of the doctrine of *res judicata* and collateral estoppel is given sufficient effect if relitigation of the same ultimate issue is barred. To bar the relitigation of underlying evidentiary questions, simply because findings were made upon them in a prior action involving a different legal issue, would go too far. If the issue of ultimate fact is not the same in the two actions, fragmentary findings of evidentiary facts in the first action ought not to be pulled out of the adjudication and made independently binding. Collateral estoppel should properly be restricted to ultimate facts.

This whole subject was thoroughly examined in a penetrating opinion by Judge LEARNED HAND in a leading Federal case (*Evergreens* v. *Nunan*, 141 F. 2d 927, 931, cert. denied 323 U. S. 720). Judge HAND concluded that findings of fact are not binding as establishing "mediate data" in a second proceeding between the same parties or their privies, with respect to a different ultimate issue.

The Restatement of Judgments puts the rule as follows: "[T]he determination of merely evidentiary or mediate facts" is not conclusive between the parties in a subsequent action "even though the determination of the facts in issue is dependent upon the determination of the evidentiary or mediate facts" (Restatement, Judgments, § 68, *Comment p,* as revised in 1948 Supp., p. 336).

The point was touched upon in *People ex rel. McCanliss* v. *McCanliss* (255 N. Y. 456, 459) where the court, per CARDOZO, Ch. J., said: "Findings of evidentiary facts though germane to the proceeding in which they have been made, are not always conclusive in another as part of the thing adjudged". (See, also, 65 Harv. L. Rev. 818, 842–843; 30A Am. Jur., Judgments, § 379 [1958].)

We believe that the view expressed in these authorities is sound and should be followed. Therefore, we conclude that, under the law of New York, the plaintiffs are not estopped by the prior adverse determination from relitigating the underlying evidentiary questions bearing upon the ultimate issue of whether the automobile was being used with the owners' permission at the time of the accident within the meaning of the New York statute.

There remains for consideration only the conflict of laws question involved in this case. The prior judgment, the effect of which is under consideration, is a New Hampshire judgment. It is the general rule that the *res judicata* effect of a judgment is to be determined by the law of the State in which the judgment was rendered. (*Johnson* v. *Muelberger,* 340 U. S. 581; Restatement, Conflict of Laws, § 450.) It may well be that the law of New Hampshire, rather than that of New York, is controlling as to the effect to be given to the evidentiary findings underlying the New Hampshire judgment. However, it appears that the New Hampshire law is the same as the law of New York. In fact, the point seems to be settled more firmly in New Hampshire than it is in New York. In *Laconia Nat. Bank* v. *LaVallee* (96 N. H. 353, 355) the Supreme Court of New Hampshire cited with approval the Restatement of Judgments (§ 68, *Comment p*) and said: "The difference between matters in issue and matters in evidence determines the extent to which the former action constitutes an estoppel to the maintenance of the subsequent action * * * Matters in evidence may be controverted and form the basis upon which a matter in issue is decided but they are not the same. Matters in issue once decided cannot be litigated again. Matters in evidence may be."

It thus appears that, whether the law of New York or the law of New Hampshire is applied, the conclusion is the same. The plaintiffs are free to try out the evidentiary questions *de novo* in the present action.

If the evidence upon the trial in New York is the same as that which was introduced in New Hampshire and the same inferences are drawn from the evidence, the trial may well result in a judgment in favor of the defendants on the issue of permission under the New York statute (*Psota* v. *Long Is. R. R. Co.,* 246 N. Y. 388; *Arcara* v. *Moresse,* 258 N. Y. 211). But, of course, we are concerned here only with the question of whether the present actions should be summarily dismissed upon the ground of *res judicata* and not with the prospect of the plaintiffs' ultimate success or failure on the merits.

The orders granting summary judgment in favor of the defendants and the judgments entered thereon should be reversed and the motions of the defendants for summary judgment should be denied.

All concur. Present — McCurn, P. J., Kimball, Bastow, Goldman and Halpern, JJ.

Judgments and orders reversed, with $10 costs and disbursements and motions denied, with $10 costs.