HUGH MORGAN, JR., et al., Copartners Doing Business under the Name of DUER, STRONG & WHITEHEAD, Appellants, *v.* H. P. DREWRY, S. A. R. L., Defendant, and ARISTOTLES S. ONASSIS, Respondent.

First Department, November 9, 1954.

*Emerson F. Davis* of counsel (*Charles R. Van de Walle* with him on the brief; *Hamlin, Hubbell & Davis,* attorneys), for appellants.

*Francis X. Nestor* of counsel (*John P. Gorman* with him on the brief; *Gorman & Nestor,* attorneys), for respondent.

COHN, J. This is an action brought by plaintiffs, a firm of New York attorneys, against their former client H. P. Drewry, S. A. R. L., a foreign corporation (hereafter called Drewry) to collect the sum of $25,000 for services allegedly performed on Drewry's behalf in an action instituted in the Supreme Court, New York County, in December, 1946. In their complaint plaintiffs allege that they have acquired a lien under section 475 of the Judiciary Law of the State of New York on a cause of action which Drewry brought, through plaintiffs as attorneys, in this State based upon a judgment which Drewry had obtained in the courts of England against defendant-respondent Aristotles S. Onassis (hereafter called Onassis); and pray for a foreclosure of their attorneys' lien upon such cause of action and a subsequent settlement thereof by Onassis.

The facts are as follows: In March, 1942, Drewry obtained a judgment against Onassis in the High Court of Justice in England, King's Bench Division, in an amount equal to $362,489.05. Thereafter Drewry engaged plaintiffs to commence an action against Onassis on this judgment in the Supreme Court of this State. This court held that the action did not then lie because Drewry was under disability of the Trading with the Enemy Act. (*Drewry, S. A. R. L.,* v. *Onassis,* 266 App. Div. 292, affd. 291 N. Y. 779.)

In October, 1946, and after the termination of the world-wide hostilities, Drewry again retained plaintiffs to commence an action in the New York Supreme Court on the same judgment against Onassis. This, plaintiffs did in December, 1946. Onassis defended the New York action on the English judgment. Not until an appeal from an order denying a motion to dismiss the complaint was affirmed by this court, did Onassis serve his

answer. That action is still pending. Onassis had negotiated with plaintiffs and ultimately offered to settle the pending action in New York and the underlying judgment for 93,500 pounds sterling. At this point in the negotiations with Onassis, Drewry, upon learning of plaintiffs' claim for a fee of $25,000 for their services, instructed plaintiffs to terminate all further discussions with Onassis.

Meanwhile, early in 1947 Onassis instructed a solicitor in England to reopen the proceedings in the British courts. After a trial in the King's Bench Division of the High Court of England, on March 29, 1949, the judgment against Onassis was set aside upon the ground that the former manager of Drewry and its solicitors were guilty of breach of warranty to act (*Onassis* v. *Drewry*, S. A. R. L., 82 Ll. L. R. 565). On appeal to the Court of Appeals of the High Court, that judgment was reversed because of failure of adequate proof, but the court granted leave to Onassis to appeal to the House of Lords, on condition that Onassis pay into court the sum of 50,000 pounds (*Onassis* v. *Drewry*, S. A. R. L., 83 Ll. L. R. 249). The condition was met and the case was set down for argument in the House of Lords. Negotiations in England were then entered into in the Fall of 1950 between Drewry and Onassis for the purpose of adjustment. These culminated in London in 1951 in an agreement pursuant to which the English judgment was settled for 110,000 pounds. The judgment thus compromised, was the very claim upon which the pending New York action was grounded. Reopening of litigation in England in 1947 caused the New York action to be held in abeyance pending the outcome of the renewed English litigation. News of the settlement was concealed, so it is alleged, from plaintiffs, the New York attorneys, who had been paid no fee for their services here.

On motion of Onassis for summary judgment dismissing the complaint, the Special Term has held that " the fund was not created as the result of the services rendered by plaintiffs and at no time was within the jurisdiction of the court ", and that plaintiffs accordingly were not entitled to recovery. From the order granting summary judgment dismissing plaintiffs' complaint this appeal is taken. A motion by plaintiffs for an order directing summary judgment in their favor and for an assessment of damages was likewise denied. Plaintiffs are also appealing from that order.

Solution to the problem presented here is to be found in the language of section 475 of the Judiciary Law. It reads: " From the commencement of an action, special or other proceeding in

any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.''

Clearly from the commencement of an action, the attorney who appears for a party has a lien upon his client's cause of action, and the proceeds thereof in whatever hands they may come. The lien cannot be affected by any settlement between the parties before or after judgment. It has long been held that this statute is remedial in character and should be construed liberally in aid of the object of the Legislature, which was to furnish security to attorneys by giving them a lien upon the subject of the action. (*Fischer-Hansen* v. *Brooklyn Heights R. R. Co.*, 173 N. Y. 492, 499; *Matter of Herlihy*, 274 App. Div. 342.)

Onassis argues that the only recovery made by Drewry against Onassis was in an English action which had come to judgment and then had been reopened by Onassis and subsequently settled; that a lien attaches only to the fund and hence could not apply to the settlement effected by British attorneys in London upon litigation pending in British courts. Under the statute the lien attaches to the cause of action and the proceeds of the action can be followed wherever they may happen to be. This court, in construing section 475 of the Judiciary Law in *Matter of Lourie* (254 App. Div. 555), has ruled '' The statutory lien of an attorney is not limited to the proceeds of the action in which the services are rendered but attaches to his ' client's cause of action ' and to any recovery thereon even though in a different action. (See section 475 of the Judiciary Law and *Matter of Board of Water Supply of City of New York*, 179 App. Div. 877.) ''

The original action on the English judgment is still pending in the New York Supreme Court; this court retains jurisdiction in personam over Drewry, which voluntarily subjected itself to such jurisdiction by commencing the action, and it retains in personam jurisdiction over Onassis, who was personally served in New York, and who thereafter appeared and answered.

The English judgment, which in this State rests upon principles of comity of nations for its efficacy, is a mere chose in action or cause of action in New York, and is clearly within the contemplation of section 475 of the Judiciary Law. By the very terms of that section, the attorneys' lien upon his client's cause of action could not be '' affected by any settlement between the parties before or after judgment, final order or determination.'' Drewry, plaintiffs' client, had a perfect right to settle its cause of action before judgment without regard to the wishes of its New York attorneys. However, the New York attorneys were entitled to be paid for their services by their client. Upon failure of the client to pay, Onassis by settling with Drewry without the knowledge and consent of Drewry's New York attorneys, did so at his peril. Here, so it is alleged, Onassis had actual and constructive knowledge of plaintiffs' services in attempting to enforce the judgment obtained in the English courts in the State of New York. Upon settlement of Drewry's claim against Onassis, the latter was bound to retain sufficient funds to discharge plaintiffs' lien upon that claim. It is now well-recognized law in this State that where a defendant settles a claim or cause of action the lien of the plaintiff's attorney attaches to the amount agreed upon in settlement the instant the agreement is made and the law will not permit the defendant to say it has nothing in its hands to satisfy the lien. (*Fischer-Hansen* v. *Brooklyn Heights R. R. Co.*, 173 N. Y. 492, *supra; Sargent* v. *McLeod*, 209 N. Y. 360; *Matter of Levy*, 249 N. Y. 168.)

It is the contention of Onassis that the English judgment bears no relation to the action begun here, and that only the English judgment has been settled. However, the basis of the New York action was the English judgment. Once the English judgment is wiped out by settlement or otherwise the cause of action before the courts in New York is simultaneously extinguished although the New York action might technically be pending. We find no merit to the contention urged by defendant Onassis that section 475 of the Judiciary Law cannot apply to the facts here as urged by plaintiffs. Such an interpretation would be granting a special immunity to nonresident litigants, a doctrine to which our courts could not subscribe. In *Oishei* v. *Pennsylvania R. R. Co.* (117 App. Div. 110, affd. 191 N. Y. 544), a case which presents a picture somewhat similar to the one at bar, this court in holding that section 475 of the Judiciary Law applied to a foreign claim said at page 114: '' The defendant, although a foreign corporation, was served in this State

and appeared in this action. The court thus obtained jurisdiction over the person of the defendant and had jurisdiction over the subject-matter of the action to enforce a lien on a cause of action, an action to enforce which was pending in this State. By the service upon the defendant and its appearance in this action the court obtained jurisdiction over the defendant and could enforce on behalf of the plaintiff — a resident and citizen of this State — his right to the possession of the fund in its hands. The right to attach this fund and adjudicate as to whom it belonged attached when the court obtained jurisdiction of the person of the defendant, and the courts of this State, therefore, had the right to bring in by substituted service all those who had any interest in the fund, the ownership of which was in dispute. Here a defendant over whom the court had jurisdiction concededly had in its hands a fund, the ownership of which was in dispute between a citizen of this State and others who were without its jurisdiction. The defendant who had possession of the fund was before the court and the court had jurisdiction over him and could enforce a judgment determining the ownership of the fund; and by virtue of the jurisdiction thus acquired over the corporation in whose possession the fund was, the fund itself was within the jurisdiction of the court.''

In view of the claimed knowledge of Onassis of plaintiffs' dispute with Drewry over attorneys' fees, coupled with alleged actual and constructive knowledge of the lien which Onassis completely ignored in making his settlement with Drewry, Onassis on revelation of all of the facts at a plenary trial, would be under an affirmative duty imposed by law to protect the lien of the New York attorneys, and having failed to do so, he would be liable for the reasonable value of plaintiffs' services to Drewry. In this analysis we have assumed that plaintiffs will factually establish such relationship between the gravamen of the New York cause of action and that of the English settlement as will satisfy the trier of the facts that the settlement would destroy the New York cause of action. The action is, of course, open to any appropriate defenses, tending to show either that no lien existed or that it was discharged or waived or forfeited; and if a lien be established, the amount claimed may likewise be challenged. Disposition of all disputed issues of fact we leave to the trial court.

The order granting the motion of Onassis for summary judgment should be reversed, the motion denied and the action should be remanded to Special Term for trial, with costs to plaintiffs. The order denying the motion of plaintiffs for sum-

mary judgment should be affirmed; and the appeal from the order denying reargument of defendant's motion for summary judgment should be dismissed as academic.

DORE, J. P., COHN, CALLAHAN, BREITEL and BOTEIN, JJ., concur.

Order, granting motion of the defendant Onassis for summary judgment unanimously reversed, with $20 costs and disbursements to the appellants, the motion denied, and the action remanded to Special Term for trial. Settle order on notice. Order [denying plaintiffs' motion for summary judgment] unanimously affirmed. Appeal [from order denying reargument of defendant's motion] having become academic by virtue of the decision of this court in the appeal decided herewith, is dismissed.