Alexander Salottolo, J.
Plaintiff brought this action against the defendants for an alleged violation of an attorney’s lien. The case was tried before the court without a jury and, at the conclusion thereof, decision was reserved upon all motions and upon the entire case. The decision of a court trying a case *977 without a jury must include a statement of the ultimate facts deemed material to support the conclusions of law embodied in the judgment in order to enlighten the parties and to make more effective the review of judgments on appeal (CPLR 4213; 4 Weinstein-Korn-Miller, N. Y. Civ. Prae., par. 4213.07, p. 42-36). Pursuant to this mandate, and upon the basis of the testimony and evidence presented at the trial, the following opinion is rendered as the findings of fact and conclusions of law of the court with regard to this controversy.
The basic facts of this case are undisputed, only the legal consequences which flow therefrom are in issue. Indeed, the controversy might have been submitted to the court upon an agreed statement of facts since only a question of law is posed thereby.
The firm of Sherman, Field and Erasmous, law partnership composed of David Sherman, Theodore Field and Samuel Erasmous, commenced an action in the Supreme Court of the State of New York on behalf of one Carmelo Betancourt against the Truro Cab Corporation for personal injuries sustained by him through the alleged negligence of said corporate defendant. The firm acted as the attorney of record for the claimant in that action, and the defendant therein was represented by its attorney, Charles Newman. That action never proceeded to trial because, at an examination before trial of the claimant at the law office of Charles Newman on June 22, 1966, a settlement thereof was negotiated by the attorneys for the parties. The manner in which said settlement was effected created the controversy confronting the court in the action at bar.
On the occasion of the afore-mentioned examination before trial, David Sherman, one of the partners of the law firm acting as attorney of record for the claimant, accompanied the latter to the law office of Charles Newman. During the course of the examination, Sherman and Newman discussed the claimant’s cause of action and negotiated a settlement thereof in the claimant’s favor for the sum of $6,991. At the trial, it was established that one of the conditions of the settlement was that payment had to be made on that day (June 22) because the claimant intended to depart for Puerto Rico immediately. To facilitate the disbursement of the settlement moneys to him (the settlement amount less the fee of his attorney of record), Sherman requested that Newman make the check payable to the order of the claimant and David Sherman. Newman agreed to this request, and the check was so drawn and delivered to the claimant and Sherman. Thereafter, the check was negotiated promptly by Sherman and by the claimant.
*978 Approximately one week later, on June 30, 1962, the law partnership of Sherman, Field and Erasmous was dissolved by an agreement whereunder David Sherman assigned whatever interest he had in the cases handled by the partnership to Theodore Field.
At the trial, it was established that Sherman had retained from the proceeds of the afore-mentioned check the sum of $2,500, which represented the amount of the fee due and owing to the partnership of Sherman, Field and Erasmous, and that Sherman had never accounted for same to the latter. Discovery of Sherman’s breach of fiduciary duty to his partners led to the institution of the action now at bar, and to facilitate the bringing of such, Samuel Erasmous assigned whatever interest he had in this fee to Theodore Field. Consequently, Theodore Field brought this action in his own name as a partner in the former law firm of Sherman, Field and Erasmous and as the assignee of the other partners.
Theodore Field (hereinafter the plaintiff) commenced this action in tort against the defendants, Charles Newman and the Truro Cab Corporation, alleging a violation of the lien conferred by section 475 of the Judiciary Law. Contending that a statutory lien existed in favor of the firm of Sherman, Field and Erasmous upon the settlement in the Betancourt action, the plaintiff’s cause of action is twofold in theory. In essence, the plaintiff attempted to prove at the trial that the method employed by Charles Newman in drawing the settlement check constituted (1) a violation per se of the statutory lien conferred by section 475 of the Judiciary Law, and/or (2) such negligence on his part as to render him liable and to render his principal liable in tort for the amount of the lien.
Section 475 of the Judiciary Law reads as follows: “ From the commencement of an action, special or other proceeding in any court * * # the attorney who appears for a party has a lien upon his client’s cause of action * * * which attaches to a verdict, report, determination, decision, judgment or final order to his client’s favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before. or after judgment, final order or determination.”
The lien conferred by the statute is given only to ‘the attorney who appears for a party,” that is, the attorney of record (Weinstein v. Siedman, 173 App. Div. 219). The statute has been construed to mean that from the commencement of an action, the attorney of record for a party has a lien upon his client’s cause of action, which lien attaches to a judgment, and *979 after entry of judgment the lien cannot be affected by any private settlement between the parties (Baxter v. Connor, 119 App. Div. 450). It is now firmly established that the statutory lien attaches to the sum or value agreed upon in a settlement also, the same as it would attach to a judgment under the express provision of the statute had a prosecution of the cause of action resulted therein (3 N. Y. Jur., Attorney and Client, § 160; Witmark v. Perley, 43 Misc. 14).
In the light of this discussion of the lien conferred by the statute, it is obvious that a lien did exist upon the settlement negotiated by Sherman and Newman in favor of the attorney of record for Betancourt (the firm of Sherman, Field and Erasmous) in his action against the Truro Cab Corporation. If there was a violation of said lien, then both Newman and his client are liable therefor, the former for his action and the latter under ordinary principles of agency.
The first question to consider is whether the method employed by the defendant Newman in drawing the settlement check constituted a violation per se of the statutory lien. This question, the court finds, must be answered in the negative.
In reaching its decision, the court has considered the following three salient factors: (1) whether the defendants were duty bound to include on the check the name of the plaintiff’s firm which was the attorney of record for the claimant Betancourt, and whether such would have been the usual and ordinary practice; (2) whether, if this were not done, there were logical, explainable, special or other circumstances to warrant doing otherwise; and (3) whether, if the check was to be issued without the name of the attorney of record (the firm), the defendants were placed upon notice to make inquiry as to the propriety of such request.
At the trial, it was established that the usual method employed in drawing settlement checks is to make them payable to the order of the claimant and the attorney of record. This is done to protect the statutory lien of the attorney of record, and the statutory lien was created for the protection of attorneys of record against the knavery of their clients (Matter of Rosentover v. Weiss, 247 App. Div. 137, affd. 272 N. Y. 557).
It has been held that a defendant who has knowledge of the lien of the plaintiff’s attorney is under an affirmative duty to protect this lien and for his failure to do so is liable for the reasonable value of said attorney’s services to his client (Morgan v. Drewry, 285 App. Div. 1). Thus, when an action is settled before trial between the parties, without knowledge on the part of plaintiff’s attorney, it is deemed that the defendant has *980 retained sufficient funds out of the settlement to pay the fee of the attorney of the plaintiff and, if he has not, he remains liable to him for his services and disbursements (Ozorowski v. Pawloski, 207 Misc. 407). Inferentially, the latter two statements may be made of defendant’s attorney as well since presumptively he has knowledge of the statutory lien.
Nothing’ however, mandates that settlement checks must be made payable to the order of claimants and their attorneys of record. The practice of drawing settlement checks in this manner is pragmatic; it was devised by defense attorneys to protect the statutory liens of the attorneys of record for claimants.
While there would be a violation of said lien if a check were drawn to the order of claimant and trial counsel, since the latter has no statutory lien and must establish his claim, if any, only in the form prescribed by law for the recovery of debts (1 Carmody-Wait, New York Practice, p. 362), it would be' a harsh conclusion to draw that Newman’s omission from the check of the names of Sherman’s two partners constituted a violation per se of the statutory lien.
Indeed, the very fact that the check was drawn to the order of claimant and Sherman, one of the partners of the firm appearing for the claimant, negates such an inference, for it indicates that Newman was conscious of the firm’s lien and that he drew the check in a manner so as to protect same. As the court has noted heretofore, the statutory lien was designed to protect attorneys from the knavery of their clients. It was not designed to protect them from the knavery of their partners.
Inasmuch as the usual practice would have been to include upon the check the names of Sherman’s two partners, our inquiry must be directed towards whether or not logical, explainable, special or other circumstances existed which would warrant doing otherwise. In the opinion of the court, there were such circumstances.
As a practicing attorney for many years, the defendant Newman testified that the normal method of drawing settlement checks is to the order of claimants and their attorneys of record. He testified that on occasion a request is made by a partner of a law firm appearing for a claimant to have the check made payable to the claimant and to said partner only, and that such a request is usually granted on good cause. While he admitted that it is unusual for such requests to be made, he testified that if such a request is made it is usually granted if good reason therefor is shown. An expert witness was produced by the defense who also testified to the same effect.
*981 The court found the defendant Newman’s testimony to be highly credible even though he is vitally interested in the outcome of this litigation. The court is aware of the fact that it is not bound to give full faith and credit to the evidence of an interested witness even though he was not directly impeached and even though his testimony was uncontradicted. The court has made this determination of his credibility as a question of fact (Gildersleeve v. Landon, 73 N. Y. 609; Brooklyn Crosstown R. R. Co. v. Strong, 75 N. Y. 591; Wohlfahrt v. Beckert, 92 N. Y. 490 and Matter of Sebring, 238 App. Div. 281).
In the case at bar, it was established without contradiction thereof that immediate payment to the claimant was one of the conditions of the settlement negotiated by Sherman and Newman because the claimant intended to depart for Puerto K-ico immediately. The defendant Newman testified that the check was made payable to the order of claimant and Sherman at Sherman’s request to enable the claimant to readily cash same. Such had been proffered by Sherman as his reason for making this request.
Although no testimony was offered by the defense to show that this method of drawing the check would facilitate the cashing of same any more than if the check were drawn in the partnership name, the method selected apparently accomplished its purpose insofar as the claimant was concerned. The check was cashed promptly and the claimant received his share of the proceeds and stepped out of the picture entirely insofar as this action is concerned. It was Sherman’s knavery thereafter which created this controversy, not Newman’s method of drawing the check.
For that matter, no testimony was offered by the plaintiff to show that Sherman would have been unable to cash the check had it been drawn in the partnership name. The court notes under section 3-110 (subd. [1], par. [g]) of the Uniform Commercial Code that when an instrument is made payable to the order of a partnership it may be indorsed and transferred by any person thereto authorized. Furthermore, had the check been drawn in the partnership name, it might have been possible for Sherman to indorse it as a partner on behalf of the partnership and to negotiate it because of his fiduciary relationship to the partnership (see Partnership Law, § 20, subd. 1; Uniform Commercial Code, §§ 3-403; 3-404; § 1-201, subd. [35]; § 1-201, subd. [43]; § 3-307; § 3-304, subd. [4], par. [e]). In any event, no evidence was offered with respect to this point.
Insofar as Newman was concerned, the request, although an unusual one, was made by a partner of the firm acting as attor *982 ney of record for the claimant, and, after all, it was Sherman who appeared on the firm’s behalf at the examination before trial of the claimant. Sherman proffered an apparently logical explanation for his request and Newman acceded to it.
“ The relationship subsisting between partners is of the most intimate and confidential nature ” (Mabbett v. White, 12 N. Y. 442, 455), and if the ordinary relationship between partners is such, the relationship of law partners must be infinitely higher since they are officers of the court as well. Therefore, how could Newman have foreseen that Sherman contemplated knavery to his law partners at the time he made this request, if indeed Sherman had such an intention at that time?
While it is true that Newman might have telephoned the law offices of the partnership to verify Sherman’s authority to make such a request, the fact that Sherman was a partner of same and that he appeared on behalf of same with the client at Newman’s office created the impression quite reasonably that Sherman was empowered to negotiate the settlement upon such terms as he did.
Section 20 of the Partnership Law reads as follows:
‘1. Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.
‘‘ 2. An act of a partner which is not apparently for the carrying on of the business of the partnership in the usual way does not bind the partnership unless authorized by the other partners.” (Emphasis added.)
When Newman made the check payable as he did, his act was to protect the lien of the partnership and it was at the request of a partner. Sherman’s request was unusual but it was apparently made for the carrying on of the partnership business in the usual way (i.e., to obtain the settlement of a client’s cause of action whenever possible upon such terms as are just without the necessity of expensive and time-consuming litigation) and a reasonable explanation for such request was given. While it would have been the usual practice to make out the check in the names of the attorney of record and the claimant, the facts established that where one of the partners in the partnership requests that the check be made differently, it is the normal and usual *983 occurrence for the maker of the check to comply with that partner’s wishes if good reason therefor is shown. Such being the facts of this case, the matter is within the purview of subdivision 1 of section 20 of the Partnership Law.
The court finds as a matter of law upon the facts of this case that there was no violation per se of the lien conferred by section 475 of the Judiciary Law. Indeed, upon the facts of this case, the court is of the opinion that there was no violation at all of said lien.
Authority for this holding may be found in the case of Schiefer v. Freygang (141 App. Div. 236). In that case, a partnership between two attorneys was dissolved by an agreement whereunder one partner, Berkeley, was “ to wind up the unfinished business of said firm” (p. 237), including an abutting-property owner’s claim for damages against a railroad. The other partner, who was retiring, was to receive a percentage of the fee to be received in that action, which action was pending at the time of the dissolution.
After this action had been commenced, the abutting property owner conveyed her premises, and in the conveyance attempted to reserve to herself the right to damages. When the grantee of the conveyed premises died, the latter’s administratrix, next of kin and heirs settled with the railroad without the grantor’s consent. Thereafter, the plaintiff grantor commenced a second action to enforce her rights against the railroad under the reservation of said conveyance, and she retained Berkeley alone to bring that action and he appeared therein as her attorney of record.
The retiring partner brought an action against Berkeley for a partnership accounting and he made an application for the appointment of a receiver of the copartnership property. The court (Special Term) refused to appoint a receiver, and an order was entered reciting that ‘ ‘ the title to all the partnership property * * * passed to the defendant [Berkeley] subject to the plaintiff’s [the retiring partner’s] right to an accounting ” (p. 238). Thereafter, the railroad and other defendants settled the second action brought against them by the plaintiff grantor.
The retiring partner then moved for an order directing that the defendants in the second action pay into court one third of the amount to be paid by them on the compromise of that action on the ground that said amount represented the proportion of the recovery which the plaintiff grantor had contracted to give the attorneys originally employed by her (the partnership) to bring another and prior action with respect to the damages *984 sought to be recovered in the second suit. The Supreme Court granted this relief and directed that the money be paid into court to abide the event of a partnership accounting between the attorney of record for the plaintiff-grantor in the second action (Berkeley) and his former partner.
The Appellate Division (First Department) unanimously reversed and held that the retiring partner, who was not an attorney of record in the second action, could not have that portion of the settlement money, to which his former partner was entitled, paid into court to abide the accounting between them since the order in the action for an accounting was a bar to such relief. Further, the court found that the retiring partner had no lien on the property owner’s cause of action in the second suit because be was neither a party nor an attorney of record for a party in that action.
The Appellate Division stated (p. 239) that: “ It may be said that the respondent [the retiring partner] and his copartner as attorneys of record in the former action had a lien on the plaintiff’s cause of action, of which the defendants therein could not deprive them without their knowledge or consent. Such a theory would not avail the respondent, for it does not appear that the moneys which the defendants herein have agreed to pay are to be paid in settlement or compromise of the original action; but if it did the parties could not be made parties to a controversy between the attorneys, nor could they be delayed in the settlement of the action by the controversy between the attorneys with respect to a division of the fees which in no manner concerns them. The payment of the amount of the lien of attorneys’ fees to one of the attorneys of record would relieve the defendants from all liability even though formal notice of a lien were given”. (Emphasis added.)
The latter has relevance to what is precisely the situation in the case at bar. The controversy should be between the plaintiff and his former partner, David Sherman; it is not between the plaintiff and these defendants. Section 475-a of the Judiciary Law has no relevance to the facts of this case.
The second theory upon which plaintiff’s cause of action relies may be disposed of summarily.
The case at bar differs from the situation in the case of Field v. Flood (Index No. 6713/63 of this court): In that case, the defendants had knowledge of difficulties within the firm of Sherman, Field and Erasmous and did not rely upon Sherman’s apparent authority to make a request similar to that in the action at bar. The defendants, Flood and Allstate Insurance Company, drew back an individual indemnity agreement from *985 Sherman which promised to hold them harmless should some problem arise with respect to the manner in which their settlement check was drawn. Under such circumstances, the court properly granted summary judgment in favor of the plaintiff.
Under the facts of the action at bar, however, the elements of foreseeability and proximate causation were lacking in the plaintiff’s case, because Newman’s act was in good faith, without notice, and in reliance upon Sherman’s apparent authority. Such being the facts and for the reasons heretofore given, the court is of the opinion that there was no violation of the lien conferred by section 475 of the Judiciary Law, and since there was no violation of said lien, there can be no right of recovery against the defendants under the theory of negligence.
After trial, complaint dismissed and judgment rendered in favor of the defendants.