850 F.2d 57
 11 Fed.R.Serv.3d 595
 In Matter of Petition of ROSENMAN & COLIN,
Appellee-Cross-Appellant, for an Adjudication of
its Rights in the Matter of Sherrier v. Richard.
ROSENMAN & COLIN, Petitioner-Appellee, Cross-Appellant,
Julian Sherrier, Plaintiff,
v.
Bernice RICHARD, Defendant-Respondent-Appellant, Cross-Appellee.
 Nos. 886, 1085, Dockets 87-7957, 87-9049.
 United States Court of Appeals,
Second Circuit.
 Argued April 14, 1988.
Decided June 20, 1988.
 
 Whitney North Seymour, Jr., New York City (Craig A. Landy, Brown & Seymour, New York City, on the brief), for defendant-respondent-appellant, cross-appellee.
 J. Kelley Nevling, Jr., New York City (Rosenman & Colin, pro se, New York City, on the brief), for petitioner-appellee, cross-appellant.
 Before VAN GRAAFEILAND, NEWMAN and WINTER, Circuit Judges.
 JON O. NEWMAN, Circuit Judge:
 
 
 1
 This appeal concerns primarily a dispute between a law firm and its former client as to the extent of an attorney's lien for unpaid fees. Bernice Richard, the former client, appeals from a judgment of the District Court for the Southern District of New York (Robert W. Sweet, Judge) granting a lien in the amount of nearly $400,000 to the law firm of Rosenman & Colin ("Rosenman"). The lien applies to sums awarded to Richard in litigation against her former lover, Julian Sherrier. Richard contends on appeal that she is entitled to a jury trial, that she is not liable for the fees determined by the Court in view of Rosenman's breach of a retainer agreement, and that the lien should apply at most to the sum of $17,545, which she contends is the affirmative recovery she obtained from Sherrier. Rosenman cross-appeals, contending that the amount of the lien, as determined by the Court, is too low. We agree with the District Court that Richard was not entitled to a jury in this equitable proceeding. However, we agree with Richard that Rosenman's lien is limited to $17,545.
 
 Background
 
 2
 The history of the acrimonious litigation between Richard and Sherrier and Richard's subsequent dispute with Rosenman over legal fees has been graphically described in several opinions of the District Court. See Sherrier v. Richard, 564 F.Supp. 448 (S.D.N.Y.1983); Petition of Rosenman Colin Freund Lewis & Cohen (In re Sherrier v. Richard), 600 F.Supp. 527 (S.D.N.Y.1984); Petition of Rosenman Colin Freund Lewis & Cohen (In re Sherrier v. Richard), 656 F.Supp. 196 (S.D.N.Y.1987). We summarize only those facts necessary for an understanding of this appeal.
 
 
 3
 Bernice Richard is a wealthy New Yorker and a patron of the arts. Julian Sherrier, a citizen of Great Britain and Pakistan, is a dealer in Gandharan art, an art form that developed in Pakistan in the Second Century B.C. through the Sixth Century A.D. In the fall of 1978, Richard met Sherrier in New York, and a romantic relationship ensued. The couple became involved in a series of financial transactions involving valuable Gandharan sculptures. In July 1979, Sherrier delivered a sculpture called the "Fasting Buddha" to Richard as collateral for a $127,000 loan. In October 1979, Richard purchased from Sherrier for $25,000 a piece called the "Padmapani Bronze." In 1979 and 1980, Richard gave Sherrier approximately $340,000, which he used toward the purchase of four Gandharan sculptures in Pakistan, the "Princely," "Elongated," "Standing," and "Seated" Buddhas, all of which were sent to Richard's townhouse in New York. In 1980, Richard discovered that the Padmapani Bronze had been stolen and that Sherrier had used the insurance proceeds for his own purposes. Following this revelation, the romance deteriorated, and the couple began to disagree as to their respective rights in the five Buddhas located in Richard's townhouse.
 
 
 4
 Richard turned for legal advice to the Rosenman firm, which had performed legal services for her on several occasions. In October 1980, she signed a retainer agreement to have the firm represent her in the Sherrier matter. The agreement provided that Rosenman "will be paid for our services ... at our normal time charges." Thereafter, Rosenman began doing research in order to advise Richard how best to protect her interests. When the Rosenman partner in charge of the matter sent Richard her first bill in November 1980, he attached a note saying, "I am going to bill you monthly so that you will know at all times exactly how much this matter is costing you."
 
 
 5
 Sherrier filed suit against Richard in the Southern District of New York on June 7, 1982. He claimed that the Standing, Seated, Princely, and Elongated Buddhas had been acquired in a joint venture and that he was entitled to half of their value in excess of the parties' respective contributions to the purchase price. Additionally, he claimed he was entitled to the Fasting Buddha upon return of the $127,000 loan. Richard, represented by Rosenman, responded that she owned the Standing, Seated, Princely, and Elongated Buddhas outright and that she had a half interest in the Fasting Buddha. In addition, Richard counterclaimed for the insurance proceeds from the Padmapani Bronze. After a bench trial, the District Court awarded Sherrier a half interest in the value (less purchase price) of the Standing, Seated, Princely, and Elongated Buddhas and the right to complete ownership of the Fasting Buddha upon repayment of the loan. The Court also determined that Richard was entitled to insurance proceeds resulting from the theft of the Padmapani Bronze, plus interest, in the total amount of $17,545. Sherrier v. Richard, supra, 564 F.Supp. at 459 (hereinafter "the underlying lawsuit" or "Sherrier "). An elaborate judgment was entered to reflect these determinations. The details of that judgment will be described below in connection with our determination of the amount of "recovery" that is subject to Rosenman's lien.
 
 
 6
 Following the trial, a dispute arose between Richard and Rosenman over fees incurred in the case. Richard refused to pay a substantial portion of her bill on the ground that Rosenman had overstaffed the underlying lawsuit and had wasted resources pursuing irrelevant matters. Richard also complained that Rosenman had misled her as to the cost of the litigation and had neglected to send her bills on a monthly basis as promised.
 
 
 7
 In June 1983, Rosenman commenced the present proceeding, seeking an order determining that Richard owed it $304,973.05 in unpaid fees and disbursements and enforcing an attorney's charging lien in that amount upon the judgment awarded Richard in the underlying lawsuit. The District Court denied Richard's motion to dismiss the fee petition, 600 F.Supp. 527 (S.D.N.Y.1984), granted Rosenman's motion to strike Richard's demand for a jury trial, 656 F.Supp. 196 (S.D.N.Y.1987), and, after a bench trial, ruled substantially in favor of Rosenman, 668 F.Supp. 788 (S.D.N.Y.1987). The Court held that although Rosenman had materially breached its contract with Richard by failing to send monthly billing statements, Rosenman was entitled to recover for its services on a quantum meruit theory. The Court awarded Rosenman an attorney's charging lien of $399,841.46, plus costs and post-judgment interest. This amount included approximately $248,000 in unpaid legal fees, approximately $118,000 in prejudgment interest, and $33,351.90 for disbursements.
 
 
 8
 Both parties appeal from the judgment of the District Court. Richard contends that she was entitled to a jury trial, that Rosenman's breach of the retainer agreement precludes or at least limits the quantum meruit award, and that if she is liable to Rosenman for fees, an attorney's lien is enforceable against her only up to $17,545. Rosenman contends that it did not breach the retainer and that it is entitled to a lien in the full amount of its unpaid fees.
 
 Discussion
 A. Jury Trial
 
 9
 Richard contends that this proceeding is essentially a contractual dispute over an attorney's fee and that she is therefore entitled to a jury. We disagree for substantially the reasons set forth in the District Court's comprehensive opinion granting Rosenman's motion to strike Richard's jury request. 656 F.Supp. 196. This is an action to enforce a lien. See N.Y.Jud.Law Sec. 475 (McKinney 1983). In the context of both attorneys' liens and other liens, such actions have repeatedly been regarded as equitable in nature so that no jury right attaches. See Damsky v. Zavatt, 289 F.2d 46, 53 (2d Cir.1961) (tax lien); Walter E. Heller & Co. v. O/S Sonny V, 595 F.2d 968, 976 n. 7 (5th Cir.1979) (mortgage foreclosure); In re King, 168 N.Y. 53, 58-59, 60 N.E. 1054, 1056 (1901) (attorney's lien); Flores v. Barricella, 123 A.D.2d 600, 600, 506 N.Y.S.2d 885, 886 (2d Dep't 1986) (attorney's lien); In re Britton's Will, 187 Misc. 70, 60 N.Y.S.2d 466, 474 (Monroe Cty.Surr.Ct.1946) (attorney's lien).
 
 
 10
 Simler v. Conner, 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963), on which Richard relies, is not to the contrary. In that case, the Supreme Court held that the plaintiff was entitled to a jury in a declaratory judgment action he brought to determine the extent of his liability to an attorney under a retainer agreement. Simler followed the long-settled rule that declaratory judgment actions are inherently neither equitable nor legal and that the nature of the underlying dispute determines whether a jury trial is available. See Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); (American) Lumbermens Mutual Casualty Co. v. Timms & Howard, Inc., 108 F.2d 497, 499 (2d Cir.1939); Owens-Illinois, Inc. v. Lake Shore Land Co., Inc., 610 F.2d 1185, 1189 (3d Cir.1979); Fed.R.Civ.P. 57, 5 Moore's Federal Practice p 38.29 at 38-230 (2d ed. 1987). In contrast to declaratory judgment actions, proceedings to enforce a lien are inherently equitable. No jury is available notwithstanding that traditionally legal issues are raised, such as the contractual liability giving rise to the lien. See Damsky v. Zavatt, supra, 289 F.2d at 53; Walter E. Heller & Co. v. O/S Sonny V, supra, 595 F.2d at 976 n. 7; Rozelle v. Connecticut General Life Insurance Co., 471 F.2d 29, 31 (10th Cir.1972), cert. denied, 411 U.S. 921, 93 S.Ct. 1549, 36 L.Ed.2d 314 (1973).
 
 B. Amount and Enforceability of Lien
 
 11
 The parties dispute both Richard's liability for Rosenman's fee and the extent to which an attorney's charging lien may be asserted. We find it convenient to resolve initially the dispute concerning the extent of the lien. Richard contends that such a lien is enforceable only against her affirmative recovery in the underlying lawsuit, which she asserts is $17,545. Rosenman responds that the lien is enforceable against approximately $780,000 worth of money and property that Rosenman contends Richard retained pursuant to the judgment in that lawsuit. Without deciding the full extent of Richard's liability to Rosenman, we conclude that the lien is enforceable only in the amount of $17,545.
 
 
 12
 Rosenman's petition for an attorney's lien is governed by section 475 of the New York Judiciary Law (McKinney 1983). That section provides that an "attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a ... judgment ... in his client's favor, and the proceeds thereof in whatever hands they may come." Id. Importantly, section 475 does not authorize the court to impose a charging lien upon any and all property owned by the attorney's client. In re Shirley Duke Associates, 611 F.2d 15, 18 (2d Cir.1979); Morey v. Schuster, 159 A.D. 602, 609, 145 N.Y.S. 258, 262-63 (1913), aff'd, 217 N.Y. 639, 112 N.E. 1066 (1916). Rather, an attorney is limited to a lien on the judgment "in his client's favor." The attorney may collect out of funds or property he obtains on behalf of his client, In re Shirley Duke Associates, supra, 611 F.2d at 18; Ekelman v. Marano, 251 N.Y. 173, 176, 167 N.E. 211 (1929), on the theory that "it is the attorney who has created the fund out of which he is paid by his efforts." Goldstein, Goldman, Kessler & Underberg v. 4000 East River Road Associates, 64 A.D.2d 484, 487, 409 N.Y.S.2d 886, 887 (4th Dep't 1978), aff'd, 48 N.Y.2d 890, 424 N.Y.S.2d 896, 400 N.E.2d 1348 (1979); see In re Heinsheimer, 214 N.Y. 361, 365, 108 N.E. 636 (1915); Spinello v. Spinello, 70 Misc.2d 521, 525-26, 334 N.Y.S.2d 70, 76 (Sup.Ct.1972).
 
 
 13
 An attorney who merely defends or protects his client's interest in property without obtaining an affirmative recovery is not entitled to a lien on the property that his client retains. See Ekelman v. Marano, supra, 251 N.Y. at 176, 167 N.E. 211; Desmond v. Socha, 38 A.D.2d 22, 327 N.Y.S.2d 178 (3d Dep't 1971), aff'd, 31 N.Y.2d 687, 337 N.Y.S.2d 261, 289 N.E.2d 181 (1972). In Ekelman, an attorney represented his client in a suit by the client's husband to divest her interest in property owned jointly by husband and wife. The Court of Appeals held that even if the client had succeeded in keeping her interest in the property, no charging lien would attach: "a judgment in her favor would give to the plaintiff's client no money or property which she did not possess before the attack was made and repulsed." 251 N.Y. at 176, 167 N.E. 211. In Desmond, an attorney successfully argued that a zoning ordinance limiting the value of his client's property was unconstitutional; the court ruled that the attorney was not entitled to a lien on the enhanced value of the property. 38 A.D.2d at 24, 327 N.Y.S.2d at 181. Other cases have reached similar results. See, e.g., Golden v. Whittemore, 125 A.D.2d 942, 510 N.Y.S.2d 340 (4th Dep't 1986) (no lien on client's house because client "already owned the marital residence" before it became the subject of a divorce proceeding); Goldstein, Goldman, Kessler & Underberg v. 4000 East River Road Associates, supra (attorney successfully challenged property tax assessment; no lien on tax savings). See generally 7 N.Y.Jur.2d Attorneys at Law Sec. 186 at p. 114 (1980).
 
 
 14
 Rosenman's charging lien may be enforced only to the extent that the law firm obtained an affirmative recovery in the underlying lawsuit. That proceeding involved three areas of dispute: (1) the delivery to Richard of the Fasting Buddha as security for the $127,000 loan to Sherrier, (2) the purchase of the Standing, Seated, Princely, and Elongated Buddhas, and (3) the disposition of the insurance proceeds from the theft of the Padmapani Bronze. We determine that Richard obtained an affirmative recovery only with respect to the insurance proceeds.
 
 
 15
 In the underlying lawsuit, Sherrier asked the court to deliver the Fasting Buddha to him upon his repayment of Richard's $127,000 loan, with interest. Sherrier represented that he was willing to pay $185,000 in exchange for the Buddha, which is what he calculated to be the amount he owed. Richard contended that she was entitled not only to repayment of the loan, which Sherrier acknowledged, but also to an ownership interest in the Fasting Buddha, which Sherrier disputed. Her position was that the Buddha had originally been collateral, but that in exchange for her forbearance in demanding repayment, Sherrier had agreed to give her an ownership interest in the statue and that upon a sale of the piece at an agreed price, Richard would recover her loan, plus interest, with any remaining proceeds to be divided evenly between Sherrier and Richard.
 
 
 16
 The District Court in Sherrier rejected Richard's claim. The Court agreed with Sherrier that the Fasting Buddha was purely collateral and ordered Richard to return it to Sherrier upon repayment of the loan, with interest, which the Court calculated as a total sum of $176,430.70. 564 F.Supp. at 456. Repayment of the loan cannot be considered affirmative recovery because Sherrier had always conceded this liability, and Richard lost possession of the Fasting Buddha. In fact, the District Court's judgment put Richard in a worse position than where she began because Sherrier was required to pay roughly $10,000 less for the Buddha than he had offered prior to the litigation. Under these circumstances, no basis for a lien was created.
 
 
 17
 Nor did Richard obtain affirmative recovery with respect to the Standing, Seated, Princely, and Elongated Buddhas. Sherrier had purchased these four sculptures in Pakistan primarily with Richard's money and had sent them to Richard in New York. In the underlying lawsuit, Sherrier conceded that he had used Richard's funds to acquire the sculptures, but he contended that he was entitled to an ownership interest in them because the couple had been engaged in a joint venture. Sherrier sought a judgment that would divide equally the value of the Buddhas after each party recovered his or her contribution to the purchase price. Richard denied that a joint venture had ever existed. Her position was that Sherrier had acquired the Buddhas solely for her benefit in exchange for her financing his trips to Pakistan, where he had the opportunity to purchase art for himself as well as for her. Richard's counterclaims sought a judgment that would award her complete ownership of the four sculptures, which she had in her possession.
 
 
 18
 The decision in Sherrier rejected Richard's contentions and granted Sherrier's requested relief in full. Judge Sweet decided that the sculptures were acquired in a joint venture. Richard and Sherrier were entitled to recoup the amounts they had paid for the sculptures, and any remaining value would be divided evenly between them. Rather than force a sale of the sculptures to settle these issues monetarily, the Court chose to handle the matter primarily as an in-kind distribution. After ascertaining the values of the four sculptures, the Court concluded that the terms of the judgment would be implemented by awarding two to Richard and two to Sherrier. Additionally, Sherrier was required to pay Richard $237,700 in cash, which adjusted for the fact that Richard had contributed more to the purchase price and that the two sculptures awarded to Sherrier were more valuable than the two awarded to Richard.[1] Neither the sculptures awarded to Richard nor the cash payment can be considered affirmative recovery. Sherrier conceded all along that the sculptures had been purchased primarily with Richard's money and that she was entitled to her purchase money plus half of the profits. 564 F.Supp. at 457. All Sherrier sued for was his right to half of the profits, which he was awarded. That the judgment gave to Richard two sculptures and some money does not mean that she obtained "a judgment in [her] favor." N.Y.Jud.Law Sec. 475. Rather, she merely retained what she was undisputedly entitled to before the litigation began, which was considerably less than what she claimed she was entitled to. Rosenman's litigation efforts in this regard did not create any assets to which an attorney's charging lien could attach. See Ekelman v. Marano, supra, 251 N.Y. at 176, 167 N.E. 211; Desmond v. Socha, supra, 38 A.D.2d at 24, 327 N.Y.S.2d at 180 ("Where the attorneys' services do not create any proceeds but consist solely of defending a title or interest already held by the client, there is no lien on the [property retained]").[2]
 
 
 19
 The only affirmative recovery Rosenman obtained on behalf of Richard was the insurance proceeds from the theft of the Padmapani Bronze. Richard had purchased the Bronze from Sherrier for $25,000. It was kept in the London residence of a friend of Sherrier's from where it was stolen. In Sherrier, Richard counterclaimed for an unspecified amount of insurance proceeds, which she claimed Sherrier had withheld from her. The trial court awarded her $17,545, representing $14,500 of proceeds, plus interest. Because the insurance proceeds were contested and the money was obtained by virtue of Rosenman's litigation efforts, the $17,545 is an affirmative recovery to which a lien may attach.
 
 
 20
 Since we conclude that Rosenman's charging lien is enforceable only against $17,545 of Richard's assets, we need not consider the issues the parties raise regarding whether Rosenman materially breached the retainer agreement by failing to send monthly bills or the full extent of Richard's liability to Rosenman. We need determine only that Richard is liable for at least $17,545 of Rosenman's unpaid fees and disbursements. Even if Rosenman did breach the retainer, Richard would be liable for at least $17,545 on a quantum meruit theory. Where a retainer agreement is unenforceable, the attorney is entitled under New York law to collect the reasonable value of his services, notwithstanding that it was the attorney's misconduct that precluded liability under the written contract. See, e.g., Application of Kamerman, 278 F.2d 411 (2d Cir.1960) (champertous contract); Newman v. Silver, 553 F.Supp. 485, 496 (S.D.N.Y.1982), aff'd in pertinent part, remanded in part on other grounds, 713 F.2d 14 (2d Cir.1983) (unconscionable overcharging); Matter of Schanzer, 7 A.D.2d 275, 182 N.Y.S.2d 475 (1st Dep't 1959), aff'd, 8 N.Y.2d 972, 204 N.Y.S.2d 349, 169 N.E.2d 11 (1960) (attorney abandoned retainer agreement).[3] Richard argues that the District Judge's quantum meruit award of approximately $280,000 in fees and expenses was excessive in light of Rosenman's breach. However, Richard does not dispute that Rosenman's services were worth at least $17,545, and at oral argument, her counsel represented that she would not contest a lien in that amount. We therefore hold that Rosenman is entitled to an attorney's charging lien only in the amount of $17,545. We do not decide whether Rosenman is entitled to additional fees beyond the scope of the lien. The cross-appeal is therefore dismissed as moot.
 
 
 21
 The judgment of the District Court is reversed and the cause remanded with directions to enter a judgment consistent with this opinion. No costs.
 
 
 
 [1]
 The District Court subsequently modified the allocation of Buddhas and money between Sherrier and Richard in light of new evidence showing that Sherrier had contributed less to the purchase price of the statues than the District Court had originally found. The modification did not disturb the Court's ruling that the parties were engaged in a joint venture and that Sherrier was entitled to the purchase money he had spent plus a half interest in the profits from the sculptures. Thus, the modification did not transform the judgment into an affirmative recovery for Richard. Moreover, the modified judgment states that it is not intended to affect the attorney's lien proceeding
 
 
 [2]
 Rosenman's efforts with respect to the four Buddhas acquired in Pakistan are not analogous to an attorney's successful collection upon a prior judgment from a foreign jurisdiction. See Neimark v. Martin, 7 A.D.2d 934, 183 N.Y.S.2d 812 (2d Dep't 1959); Morgan v. Drewry, S.A.R.L., 285 A.D. 1, 135 N.Y.S.2d 171 (1st Dep't 1954). Enforcement of a foreign judgment involves converting it into a New York judgment, see N.Y.Civ.Prac.L. & R. Art. 54 (McKinney 1978), or bringing an action upon the foreign judgment, see N.Y.Civ.Prac.L. & R. Secs. 5303, 5403 (McKinney 1978). An attorney who successfully uses these procedures to collect upon a contested foreign judgment has obtained a recovery for his client as a result of his efforts. In contrast, Rosenman did not have to do anything to obtain for Richard a half interest in the Buddhas (after recoupment of purchase price), since Sherrier never disputed her ownership to that extent
 
 
 [3]
 Richard suggests that a party who materially breaches a contract is precluded from any recovery in quantum meruit for the benefit he has conferred. New York appears to follow such a rule in the context of construction contracts, see, e.g., Smith v. Brady, 17 N.Y. 173 (1858); Triple M. Roof Corp. v. Greater Jericho Corp., 43 A.D.2d 594, 594, 349 N.Y.S.2d 771, 773 (2d Dep't 1973), though this is a minority view, see Restatement of Contracts 2d Sec. 374; Farnsworth, Contracts Sec. 8.14 (1982), and even in New York, the rule does not appear to apply to other kinds of contracts, see, National Telefilm Associates, Inc. v. Pamandia Productions, Inc., 42 A.D.2d 514, 344 N.Y.S.2d 418 (1st Dep't 1973); see also Imero Fiorentino Associates, Inc. v. Green, 85 A.D.2d 419, 447 N.Y.S.2d 942 (1st Dep't 1982). At any rate, we are satisfied that if New York permits an attorney to recover in quantum meruit when he is guilty of champerty, unconscionable overcharging, or neglect, then under the circumstances of this case, where Rosenman's alleged breach consisted merely of failing to send billing statements on time, some recovery in quantum meruit would be appropriate