**HARRISON CONFERENCE SERVICES, INC., Plaintiff,**

v.

**DOLCE CONFERENCE SERVICES, INC., Marenzana Group, Inc., Dolce Conference Services of Connecticut, Inc., and Dolce Company, Defendants.**

**No. 90 C 4459.**

United States District Court, E.D. New York.

Nov. 13, 1992.

LeBoeuf, Lamb, Leiby & MacRae, New York City (Daniel R. Solin, of counsel), for plaintiff and pro se.

Richards & O'Neil, (Kenneth I. Schacter, of counsel), New York City, for plaintiff.

Jones, Day, Reavis & Pogue, New York City (Theresa M. Gillis, of counsel), for defendants.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

Plaintiff, a New York corporation, brought this action claiming that defendants, all citizens of states other than New York, improperly procured and used plaintiff's trade secrets and proprietary business information. The court has jurisdiction under 28 U.S.C. § 1332 by reason of diversity of citizenship.

Plaintiff has moved for an order directing that Richards & O'Neil be substituted as counsel for plaintiff in place of LeBoeuf, Lamb, Leiby & MacRae ("LeBoeuf").

Because plaintiff has not paid LeBoeuf in full for its services, LeBoeuf cross-moves for an order exercising jurisdiction over its fee dispute, setting down an expedited hearing to determine the amount of LeBoeuf's charging lien, and conditioning the granting of plaintiff's motion on the payment of the disputed fee or on the posting of adequate security by plaintiff.

If its requests are granted, LeBoeuf does not object to plaintiff's motion to substitute Richards & O'Neil as plaintiff's counsel of record.

## I

The parties to this action have consumed the resources of this court and numerous law firms during the course of the past two years. The papers show, in substance, the following.

Plaintiff retained Gaston & Snow, a now-bankrupt firm, at the outset of this litigation. It then discharged Gaston & Snow, at about the time of that firm's dissolution, due to its "excessive billing," and it refused to pay in full the fees charged. At the time plaintiff's Chairman and Chief Executive, Walter A. Green, raised "serious questions" about that firm's conduct.

Thereafter, plaintiff retained the firm of Solin & Breindel until it, too, dissolved. Daniel Solin, one of its principals, became a partner of LeBoeuf, and plaintiff thereafter retained LeBoeuf.

Plaintiff now contends that LeBoeuf, too, engaged in excessive billing and misconduct. As of October 8, 1992, plaintiff has refused to pay LeBoeuf $99,236.50 in legal fees and $40,079.81 in disbursements.

During August and September of 1992, LeBoeuf and plaintiff made several attempts to resolve this dispute. On September 23, 1992, after plaintiff refused to submit their disagreement to binding arbitration, LeBoeuf asserted a retaining lien on all papers it held on behalf of plaintiff. It also "reserved" its right to assert other rights, including a charging lien pursuant to section 475 of the New York Judiciary Law. Two days later, LeBoeuf offered to release the files if plaintiff would consent to arbitration; it also advised plaintiff that airing this dispute before the court might be prejudicial to plaintiff. Plaintiff again rejected LeBoeuf's offer.

On October 1, 1992, plaintiff filed the present motion to substitute LeBoeuf without indicating a return date, apparently due to an oversight. LeBoeuf conferred with plaintiff and, with plaintiff's consent, asked the court by letter dated October 6, 1992 to set a return date of October 16, 1992.

The following day defendants' counsel sent a letter requesting that this motion, together with a motion to intervene, be adjourned "on consent" for two weeks.

LeBoeuf immediately responded that it had not agreed to a two week adjournment of the motion to substitute counsel and that it opposed any delay. It also submitted its response to the motion.

Over the course of the next several days, the parties enmeshed this court's clerk and deputy in a dispute over whether the parties, in fact, had agreed to adjourn either or both of these motions and whether either or both would be on submission. Once the court determined that the parties had not and would not reach any agreement with respect to any of the scheduling issues, defendants' request was denied.

With the return date imminent, the principals of plaintiff and LeBoeuf again attempted to resolve this dispute. They requested and received a one week adjournment of the present motion. The motion was returnable on October 23, 1992. LeBoeuf submitted a surreply dated October 20, 1992; plaintiff responded on October 27, 1992.

Most of the papers relating to this motion have been submitted *in camera*. Defendants have received notice of scheduling matters, and they have been told that it involves a fee dispute, a retaining lien and a charging lien. They have not received any of the affidavits, memoranda, or substantive letters.

## II

■ In a letter dated October 14, 1992, defendants object to the submission of any papers *in camera* and ask that, if *in camera* submissions are required, this fee dispute either be referred to a different judge or magistrate judge, or be considered only after the underlying controversy is resolved. Irrespective of how this dispute proceeds, defendants seek permission to respond to LeBoeuf's *in camera* submissions. The court necessarily addresses these procedural issues first.

LeBoeuf responded *in camera* to plaintiff's motion to avoid any prejudice to plaintiff by a public airing of the details of its fee dispute. LeBoeuf explicitly relied on *Ficom Int'l v. Israeli Export Institute*, No. 87–7461, 1989 WL 13741, 1989 U.S.Dist. LEXIS 1368 (S.D.N.Y. Feb. 10, 1989), in which Judge Haight criticized plaintiff's withdrawing counsel for serving papers on defendant's counsel which contained allegations that were potentially adverse to plaintiff and helpful to defendants. *Id.* at *6.

Defendants argue that *Ficom* is "wholly inapposite" because that dispute involved a common law retaining lien whereas this dispute involves a statutory charging lien. A charging lien controversy, they say, is "wholly unrelated" to a motion to substitute counsel.

These arguments have no merit. Regardless of the type of lien, plaintiff and its withdrawing counsel will undoubtedly seek to undermine the credibility of the other in order to convince the court that its version of the underlying contract for legal services is correct. Moreover, a charging lien, by its nature, arises when a plaintiff has not paid the attorney it seeks to substitute; it is therefore closely related to a motion to substitute counsel.

Defendants next argue that they have an "interest" in this fee dispute. They submit photocopies of fives cases which, they say, hold that defendants would be liable to LeBoeuf if they settle with plaintiff for an amount less than the amount of the lien. *Sehlmeyer v. Universal Oven Co.*, 118 A.D.2d 692, 499 N.Y.S.2d 971 (1986); *Negron v. Esposito*, 10 Misc.2d 945, 170 N.Y.S.2d 120 (App.Term 1957); *Morgan v. Drewry*, 285 A.D. 1, 135 N.Y.S.2d 171 (1954); *Field v. Truro Cab Corp.*, 51 Misc.2d 976, 274 N.Y.S.2d 621 (Civ.Ct.1966); *Ozorowski v. Pawloski*, 207 Misc. 407, 139 N.Y.S.2d 31 (Montgomery County Ct.1955).

The cases say no such thing. In so far as they are relevant, they hold that defendants, having received notice of the lien, would be liable if they paid plaintiff a judgment or settlement without satisfying LeBoeuf's lien. In any event, LeBoeuf is not entitled to more from defendants than the amount of any judgment or settlement. *See In Matter of Rosenman & Colin*, 850 F.2d 57 (2d Cir.1988). Defendants therefore have no "interest" in the outcome of this dispute.

Last, defendants oppose this court's review of *in camera* submissions before the underlying dispute is resolved. Defendants speculate that they may be prejudiced by the court's consideration of *in camera* submissions, but they do not explain precisely how.

Having reviewed these submissions, the court cannot see how defendants would be prejudiced by them. Absent a clear reason for imposing the burden of this dispute on another judge or magistrate judge or for delaying its resolution, the court will nei-

ther recuse itself nor postpone consideration.

In conclusion, LeBoeuf and plaintiff properly submitted their papers *in camera.* Defendants are not entitled to a more complete description of this dispute, or a briefing schedule which will permit them to respond further.

### III

■ LeBoeuf seeks, first, an order exercising and retaining supplemental jurisdiction over this dispute so that the merits may be determined by the court.

It is now settled in this Circuit that "the decision whether to fix the fees due a withdrawing attorney rests within the discretion of the District Court." *Pay Television of Greater New York, Inc. v. Sheridan,* 766 F.2d 92, 94 (2d Cir.1985). *See also Cluett, Peabody & Co., Inc. v. CPC Acquisition Co.,* 863 F.2d 251, 256 (2d Cir.1988).

Plaintiff urges the court to deny jurisdiction, rather than "embroil" itself in what plaintiff suggests will be protracted and possibly bitter litigation. Plaintiff variously describes LeBoeuf's legal representation as "sub-standard or worse," and as "undisputed" legal malpractice. It claims that LeBoeuf negligently failed to stamp "confidential" a trade secret document that LeBoeuf provided, pursuant to a protective order issued by Magistrate Judge Carter, to defendants' counsel. Plaintiff also submits a letter written by defendants' counsel asserting that LeBoeuf was generally careless because it once sent a letter to Magistrate Judge Carter marked "Draft," and it repeatedly misspelled the name of defendants' counsel. Plaintiff does not say why it waited until August or September of 1992, when it chose to dispute LeBoeuf's fees, to describe LeBoeuf's work in June 1992 as negligent or worse.

Nevertheless, assuming plaintiff accurately characterizes LeBoeuf's performance, this court would not shirk from exercising jurisdiction. The court is eager to ferret out and sanction all forms of attorney misconduct, especially when committed by counsel appearing before the court. The court will carefully consider plaintiff's defenses or counterclaims. *But see* Fed.R.Civ.P. 11 (requiring the court, on motion or on its own initiative, to impose sanctions on counsel, a represented party, or both, for interposing pleadings for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation).

Plaintiff next argues that judicial resources would not be economized if the court exercises jurisdiction. The court finds, to the contrary, that it can efficiently examine LeBoeuf's claims and plaintiff's defenses and counterclaims. Magistrate Judge Carter was intimately involved in the disclosure of plaintiff's trade secret document, and is generally familiar with LeBoeuf's conduct in this litigation. This court can quickly and carefully determine whether plaintiff's claims of misconduct and carelessness have merit.

The court exercises supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over this attorney fee dispute and any related counterclaims.

### IV

LeBoeuf requests two forms of relief. It asks the court to set down an expedited hearing to determine the amount of LeBoeuf's charging lien. In addition or in the alternative, it asks the court to condition the substitution of counsel on plaintiff either paying the disputed fees or posting adequate security.

### A

■ Plaintiff argues that a hearing to determine the amount of LeBoeuf's charging lien may be wasteful and duplicative. The charging lien would not be adequate either if plaintiff wins a judgment or settlement that is less than the amount owed LeBoeuf, or if LeBoeuf decides to press its claim for fees before a judgment or settlement is reached. The court accepts plaintiff's plea to avoid wasteful proceeding and denies LeBoeuf's request.

### B

■ The court, on the other hand, grants LeBoeuf's request to condition the grant-

ing of plaintiff's motion for substitution of counsel on the payment of fees owed by plaintiff to LeBoeuf.

In *National Equipment Rental Ltd. v. Mercury Typesetting Co.*, 323 F.2d 784 (2d Cir.1963), the Second Circuit held that a district court may condition the substitution of attorneys upon the client either paying the withdrawing attorney or posting security. This question is a viewed as "a matter relating to the court's own officers and is not subject to the doctrine of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188] ... (1938)." *See also Pay Television of Greater New York, Inc. v. Sheridan*, 766 F.2d 92, 94 (2d Cir.1985) (observing that the district court may condition the substitution of counsel on the payment of fees).

Plaintiff opposes a rapid resolution of this issue and claims that it is "entitled to the full range of protections and rights that any civil litigant in this Court enjoys, including a full trial on the merits." It cites cases in which courts elected not to decide similar disputes based on a motion for summary judgment. *See, e.g., Petition of Rosenman Colin Freund Lewis & Cohen*, 600 F.Supp. 527 (S.D.N.Y.1984); *Cluett, Peabody & Co. v. CPC Acquisition Company, Inc.*, 863 F.2d at 254 (allowing "lengthy motion practice" prior to jury trial in attorney fee dispute).

But here, LeBoeuf has offered credible evidence that more than once in this litigation plaintiff has refused to pay attorneys' fees, accusing former counsel of misconduct or malpractice. The court does not wish to see its liberal rule allowing substitution of counsel to be used in a manner that allows a party to avoid or defer paying legal fees. Such practice is an abuse of the judicial process.

The court has found no case suggesting how to proceed in this precise circumstance. When faced with a dispute between plaintiff and its withdrawing counsel who was then exercising a retaining lien, the court in *Ficom International, Inc. v. Israeli Export Institute*, No. 87–7461, 1989 WL 13741, 1989 U.S.Dist. LEXIS 1368 (S.D.N.Y.1989), stayed all proceedings, di-

rected the parties to exercise their best efforts to agree upon the amount of the fees, and ordered them to submit in writing their respective positions to the court if, after 30 days, they could not resolve the dispute.

*Ficom* provides a sensible framework. Accordingly, the court orders LeBoeuf and plaintiff to exercise their best efforts either to resolve this fee dispute or to submit it to binding arbitration. Until this dispute is resolved, all discovery and other proceedings are stayed so that plaintiff and LeBoeuf may focus on this question and so that plaintiff's new counsel need not become further embroiled in the underlying dispute.

If an agreement is not reached within 30 days, the court orders that a magistrate judge conduct a hearing and recommend the amount of fees, if any, owed by plaintiff to LeBoeuf.

The motion to substitute counsel is denied for now. In 30 days, plaintiff may renew by letter its motion to substitute counsel; it may also ask the court to lift its stay at that time. Plaintiff should describe its efforts to resolve this dispute in such letter.

### C

LeBoeuf has suggested that, solely to minimize prejudice to plaintiff, this dispute be referred to a magistrate judge other than Magistrate Judge Carter.

Magistrate Judge Carter has played and, no doubt, will continue to play an active role in resolving discovery disputes and other pre-trial matters. But he would only try the underlying dispute if all parties agree. The court therefore sees little danger of harmful prejudice to plaintiff by referring this matter to Magistrate Judge Carter.

On the other hand, as has already been explained, the court sees great economy in asking Magistrate Judge Carter to conduct a hearing and made a recommendation.

The court declines LeBoeuf's suggestion. So ordered.